## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES COPLEY, JASON EVANS, HUMBERTO GARCIA, LUZ ANGELINA GARCIA, JOAN MCDONALD, JOHN PETERSON, BETTY PRESSLEY, NATALIE ROBERTS, NORMAN SKARE, individually and as personal representative for BETTY SKARE, DAVID STONE, and KAYE WINK, Individually and as next of kin of DONALD WINK, | **No. 2:18-cv-00575-FB-PK** |
| Plaintiffs, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| BACTOLAC PHARMACEUTICAL, INC.; NATURMED, INC. d/b/a INSTITUTE FOR VIBRANT LIVING; and INDEPENDENT VITAL LIFE, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiffs Charles Copley, Jason Evans, Humberto Garcia, Luz Angelina Garcia, Joan McDonald, John Peterson, Betty Pressley, Natalie Roberts, Norman Skare, individually and as personal representative for Betty Skare, David Stone, and Kaye Wink, individually and as next of kin of Donald Wink (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, allege as follows:

## INTRODUCTION

1.    Plaintiffs bring this class action individually and on behalf of the Classes defined below (the "Classes" or, collectively, the "Class") against Bactolac Pharmaceutical, Inc.,

NaturMed, Inc. d/b/a Institute for Vibrant Living, and Independent Vital Life, LLC (collectively, "Defendants") to obtain relief, including, *inter alia*, damages and declarative relief.

2.      This action is brought to remedy violations of law in connection with Defendants' manufacture and sale of an inherently defective and dangerous dietary supplement, and their false, misleading, and deceptive marketing of that product. In particular, Defendants manufactured, blended, marketed, and distributed the supplement All Day Energy Greens® as an "all natural energy drink" that would, *inter alia*, "Naturally Increase[] Energy, Improve Digestion," and "help[] support healthy digestive function." In truth, these representations were a sham, and All Day Energy Greens® had none of the qualities touted by Defendants. Instead, it consisted of a dangerous mixture that resulted in serious illness and/or death among those who consumed it.

3.      Defendants knew that their dietary supplements contained toxic and/or harmful substances, but failed to inform consumers of that fact and allowed consumers to continue to purchase and ingest their products even after the dangers of consuming All Day Energy Greens® became known. Indeed, Defendants began receiving complaints as early as 2014 that consumers were becoming seriously ill following consumption of the supplement, yet for nearly two years Defendants made insufficient effort to prevent continued product use. Instead, Defendants continued marketing and distributing the product without interruption for the next two years.

4.      Defendants finally recalled the product in March 2016. As set forth in more detail below, however, this product recall was so poorly designed that it did not fully apprise consumers of the toxic character of All Day Energy Greens®, but instead sought to minimize legal liability in the least expensive—and least public—manner possible.

5.      For these reasons, and for the reasons set forth herein, Plaintiffs and members of the Class were harmed and suffered actual damages, in that the dietary supplement that they

purchased was defective and/or worthless, unfit for its ordinary and intended use, and placed Plaintiffs and the Class at unreasonable risk of injury or death. Plaintiffs and the Class did not receive the benefit of their bargain and did not receive a product that met ordinary consumer expectations.

6.      Plaintiffs and the Class therefore bring several claims for relief seeking compensatory and punitive damages, and declarative relief.

7.      Further, and in spite of Defendants' belated recall of their defective All Day Energy Greens® product, litigation is necessary in order to ensure that Class Members receive full and fair compensation, under the auspices of court order, for their injuries.

## PARTIES

8.      Plaintiff Charles Copley is an adult citizen of the state of Virginia and he resides in the city of Gloucester.

9.      Plaintiff Jason Evans is an adult citizen of the state of California and he resides in the city of Palm Dale.

10.      Plaintiff Humberto Garcia is an adult citizen of the state of Texas and he resides in the city of El Paso.

11.      Plaintiff Luz Angelina Garcia is an adult citizen of the state of Texas and she resides in the city of El Paso.

12.      Plaintiff Joan McDonald is an adult citizen of the state of Oregon and she resides in the city of Corvalis, Oregon.

13.      Plaintiff John Peterson is an adult citizen of the state of South Carolina and he resides in the city of West Columbia.

14.     Plaintiff Betty Pressley is an adult citizen of the state of Alabama and she resides in the city of Millbrook.

15.     Plaintiff Natalie Roberts is an adult citizen of the state of Missouri and she resides in the city of St. Louis.

16.     Plaintiff Norman Skare, appearing herein individually and as the personal representative of Betty M. Skare, deceased, is an adult citizen of the state of Wisconsin, and he resides in the city of Wausau.

17.     Plaintiff David Stone is an adult citizen of the state of Illinois and he resides in the village of Schiller Park.

18.     Kaye Wink, appearing herein individually and as next of kin of Donald Wink, deceased, is an adult citizen of the state of Kentucky, and she resides in the city of Philpot. Ms. Wink is the Administratrix of Donald Wink's estate.

19.     Defendant Bactolac Pharmaceutical, Inc. ("Bactolac") is a corporation registered in the State of New York with its principal business address located in Hauppauge, New York. Bactolac manufactures products, including dietary supplements, for distribution across the United States, including in the States of New York, Alabama, Arizona, California, Illinois, Missouri, Oregon, South Carolina, Texas, Virginia, and Wisconsin.

20.     Defendant Bactolac can be served through its registered agent for service of process, CT Corporation System, 111 Eighth Avenue, Suite 13, New York, New York 10011.

21.     Defendant NaturMed, Inc. ("NaturMed") was a corporation registered in the State of Indiana with its principal business address located in Camp Verde, Arizona. NaturMed did business as the Institute for Vibrant Living ("IVL"). NaturMed did business across the United

4

States, including in the States of New York, Alabama, Arizona, California, Illinois, Missouri, Oregon, South Carolina, Texas, Virginia, and Wisconsin.

22.     Defendant NaturMed designed, marketed, and sold dietary supplements, including All Day Energy Greens®, Go Ruby Go!®, TriMotion Joint Health Formula, SeaNu Hair™, ProstaEZ, Natto BP Plus™, Reconnect-Hearing Support™, Gluco Harmony®, and Vision Clear®.

23.     Defendant Bactolac manufactured and blended some of these products, including All Day Energy Greens®, under an agreement with NaturMed.

24.     NaturMed dissolved as a corporation on May 27, 2017.

25.     Defendant Independent Vital Life, LLC ("IVL2") is a limited liability company registered in the state of Delaware with its principal place of business in Camp Verde, Arizona.

26.     Defendant IVL2 can be served through its agent of record, Adrienne C. Hanley, 2155 W. State Route 89A, Sedona, Arizona 86336.

27.     IVL2 is a mere continuation of NaturMed, and is therefore liable as a successor entity.

28.     As set forth in more detail below, on or around April 27, 2017, after several lawsuits were filed against NaturMed alleging its dietary supplements were toxic and/or dangerous, NaturMed began to experience significant financial difficulty. Defendant IVL2 obtained a security interest in NaturMed, liquidated the company, sold NaturMed's assets to IVL2 for a fraction of their value, and retained key NaturMed personnel in positions of authority, including NaturMed's founder and member of the board of directors, Don Elgie.

29.     IVL2, in other words, is the same legal person as NaturMed, having a continued existence under a new name.

**<u>JURISDICTION AND VENUE</u>**

30.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiffs and members of the proposed Plaintiff Class are citizens of states different from Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

31.     This Court has general jurisdiction over Defendants in this case. Bactolac is domiciled in New York and during the relevant time period underlying this suit, NaturMed (and IVL2, as NaturMed's successor) carried on systematic and continuous business with Bactolac in New York. Indeed, as set forth herein, NaturMed worked in conjunction with Bactolac to manufacture, blend, label, and package All Day Energy Greens® at Bactolac's principal place of business in Hauppauge, New York, and Bactolac delivered the packaged products back to NaturMed's distribution center in Arizona. The ingredients contained in All Day Energy Greens® were jointly devised in New York, and there was a continuous flow of the defective products from New York to Arizona, and then to consumers nationwide.

32.     Furthermore, this Court has specific jurisdiction over NaturMed (and IVL2, as NaturMed's successor) because there is an affiliation between this forum and the underlying controversy. The conduct giving rise to the claims pleaded by Plaintiffs and the Class occurred, in significant part, at Bactolac's principal place of business in Hauppauge, New York. Together, Defendants jointly devised a plan to manufacture, blend, label, and package the defective All Day Energy Greens® in this forum. As set forth below, Bactolac manufactured and blended All Day Energy Greens® in this forum using ingredients that were not listed on the product label. Consequently, Defendants' conduct giving rise to Plaintiffs' claims occurred in this judicial district.

33.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Bactolac and IVL2 conduct substantial business in this District, and NaturMed conducted substantial business in this District before it was rendered insolvent; Defendants have caused harm to Plaintiffs and members of the Class in this District; and a substantial part of the events and omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

34.     Before it dissolved in May 2017, NaturMed designed, marketed, distributed, and sold various purportedly healthy dietary supplements, and publicly claimed that it was "passionate about helping people improve their health so they can enjoy their life to the fullest." NaturMed further claimed that its products "reflect our belief that nutritional support is a key component to achieving lifelong health."

35.     In addition, NaturMed publicly asserted that its products "combined the best of science and nature, giving you the most effective solutions for your health needs." On its website, NaturMed made the following "promise[s] to you" regarding its products and practices:

- "Featuring pure, all natural ingredients and [*sic*] our entire line of health supplements, is formulated based on the latest scientific research, clinical trials, and case studies."

- It "regularly conducts Good Manufacturing Practices (GMP) reviews in accordance with FDA standards. Our ingredients are tested and re-tested throughout the production process to verify the highest purity and potency."

- All its "formulas are manufactured in the USA using only NSF Certified facilities which protects consumers by ensuring that our supplements contain only the ingredients listed on the label in the dosage indicated."

36.     One of the dietary supplement products designed, marketed, distributed, and sold by NaturMed was an "all natural energy" supplement called "All Day Energy Greens – Original

Hi-Octane Energy Drink for Health & Life" and "All Day Energy Greens Fruity" (hereafter, "All Day Energy Greens").

37.     All Day Energy Greens was a powdered vegetable dietary supplement sold in cannisters. One cannister of All Day Energy Greens was one month's supply of the product if consumed daily.

38.     NaturMed made statements on its website and content packing that All Day Energy Greens contained "no chemical additives," and that it "Naturally Increases Energy, Improves Digestion, [is] Rich in Antioxidant Superfoods, Supports Weight Management" and that it "helps support healthy digestive function."

39.     NaturMed's product directions for All Day Energy Greens advised customers, including Plaintiffs, to "Supercharge your energy and overall health with All Day Energy Greens."

40.     NaturMed's All Day Energy Greens product directions make the following claims: "This green superfood is a daily dose of veggies—and a whole lot of extra pep—in one glass! JUST ONE TABLESPOON mixed in water or a smoothie makes for a truly delicious and refreshing beverage that exceeds the nutritional equivalent of FIVE servings of vegetables and fruits."

41.     Moreover, NaturMed's All Day Energy Greens product directions specifically claim that the product is "one of the most potent, energizing, immune-enhancing drinks available."

42.     The above representations are false and materially misleading because All Day Energy Greens contained substances known to be harmful or toxic when ingested by human beings and did not provide any of the benefits advertised by NaturMed. Further, as set forth in detail herein, All Day Energy Greens was manufactured with ingredients that did not comport with the

ingredients set forth on its label. Some of the ingredients used to manufacture All Day Energy Greens may cause adverse health effects when consumed by humans.

***NaturMed's Relationship with Bactolac***

43.     Bactolac represents itself as "one of the only turnkey vitamin manufacturers who offer everything, including assistance with Product Testing . . . Formula Development . . . Packaging and label application . . . [and] Taste Flavoring." *See* http://bactolac.com/productsservices-2 (last visited July 12, 2018).

44.     On or about May 13, 2010, NaturMed and Bactolac entered into a manufacturing agreement, pursuant to which Bactolac agreed to manufacture dietary supplements, including All Day Energy Greens, for NaturMed.

45.     Under the agreement, NaturMed devised a formula and list of ingredients to be included in its dietary supplements, including All Day Energy Greens, and Bactolac agreed to manufacture and blend the supplement, package it in cannisters, affix a label, and ship the supplements back to NaturMed for distribution to consumers. Accordingly, Bactolac was well aware that the dietary supplements it was packaging for NaturMed would be distributed by NaturMed to purchasing customers who expected that the ingredients set forth on the product labels would match the ingredients used by Bactolac in the manufacturing process.

46.     NaturMed provided Bactolac with product labels for All Day Energy Greens, and Bactolac affixed these labels to each product container as it was packaged.

47.     The product labels for All Day Energy Greens contain a list of ingredients that Defendants NaturMed and Bactolac represented were contained in the All Day Energy Greens product.

48.     The manufacturing agreement between NaturMed and Bactolac expressly prohibited Bactolac from using any ingredient in any product that was listed in the Safe Drinking Water and Toxicity Enforcement Act of 1986; was a "new ingredient" as that term is defined in the Dietary Supplement Health & Education Act; or is deemed "adulterated" or is otherwise unlawful to include in a dietary supplement.

49.     Bactolac, in turn, represented to NaturMed that all products purchased and delivered pursuant to the agreement would be manufactured and packaged in accordance with NaturMed's specifications, would be merchantable, and would be free from defects in workmanship and materials.

50.     In addition, Bactolac expressly represented and warranted to NaturMed that each product it delivered would comply with the applicable product specifications.

51.     Bactolac manufactured and blended dietary supplement products, including All Day Energy Greens, at its facility in Hauppauge, New York.

52.     After receiving the product ingredients from NaturMed, Bactolac blended the ingredients together in large mixers.

53.     Bactolac personnel chose the raw ingredients and measured the volumes of each ingredient that its employees then placed into the mixers.

54.     Once the ingredients were mixed into a powder, Bactolac employees filled cannisters with the powder, affixed the appropriate label, sealed the cannister, and prepared the cannisters for shipment back to NaturMed's distribution facility in Arizona.

55.     Bactolac knew and understood that the dietary supplements it shipped back to NaturMed, including All Day Energy Greens, would ultimately be distributed to NaturMed's customers for ingestion.

56.     When NaturMed received orders for All Day Energy Greens from its customers, NaturMed shipped the cannisters it received from Bactolac. NaturMed has claimed it did not open the canisters before they were shipped to the customers. Accordingly, NaturMed did not spot-test All Day Energy Greens to ensure the product it received from Bactolac met the product labeling.

***Problems with All Day Energy Greens Arise***

57.     In 2014, there was an increase in customer demand for All Day Energy Greens. As a result, NaturMed placed more orders with Bactolac than it had previously.

58.     By no later than mid-2014, NaturMed became aware of increasing customer complaints regarding All Day Energy Greens. These customer complaints primarily concerned reports of gastrointestinal distress that followed consumption of All Day Energy Greens.

59.     After NaturMed told Bactolac about this increase in complaints, Bactolac's president, Dr. Pailla M. Reddy, told NaturMed that "All Day Energy Greens and All Day Energy Greens Fruity produced for NaturMed and in accordance with the formula provided by NaturMed, are produced, tested, and held in compliance with FDA cGMP 21 C.F.R. part 111 standards and are safe for human consumption."

60.     NaturMed was suspicious that Bactolac was contaminating the product, however, and in December 2014, it monitored Bactolac's manufacturing process in its facility on Long Island. At this time, NaturMed confirmed that raw materials Bactolac was using matched the product label.

61.     Nonetheless, NaturMed claims that Bactolac refused to fully cooperate with its investigation into the customer complaints. Bactolac refused to provide paperwork requested by NaturMed and was reluctant to supply NaturMed with certificates identifying the raw materials that were used.

11

62.     Because of these suspicions, as well as Bactolac's reluctance to cooperate, NaturMed stopped using Bactolac to manufacture All Day Energy Greens in July 2015.

63.     After switching to a new manufacturer, NaturMed claims that it noticed an 80% reduction in customer complaints by late 2015.

64.     Nonetheless, and despite its suspicions, at no time in 2014 and 2015 did NaturMed notify or warn its customer base that All Day Energy Greens may cause gastrointestinal distress. At no time in 2014 and 2015 did NaturMed attempt to recall the All Day Energy Greens products manufactured by Bactolac. Indeed, even after it observed a drastic decrease in customer complaints, NaturMed provided its customers with no warnings and made no attempt to recover unused All Day Energy Greens until March of 2016.

***NaturMed Issued a Recall of All Day Energy Greens but Failed to Disclose that the Product was Dangerous***

65.     Beginning at least as early as 2014, and continuing through at least late 2015, the product labels for All Day Energy Greens do not comply with the ingredients on the product label.

66.     Indeed, various lots of All Day Energy Greens manufactured prior to 2016 contain active bacteria and other contaminations, which can cause nausea, vomiting, diarrhea, dehydration, coma, and death.

67.     Plaintiffs purchased canisters of All Day Energy Greens that contained ingredients that did not comport with the product label because they contained bacteria and other contaminations and/or ingredients not listed on the product label.

68.     On March 11, 2016, NaturMed issued a recall of its All Day Energy Greens product manufactured and distributed nationwide between July 17, 2014 and July 21, 2015, due to reported gastrointestinal distress.

69.     In connection with this recall, NaturMed sent letters to some consumers who purchased All Day Energy Greens directly from NaturMed. The letter stated that "a voluntary recall has been initiated as a precaution due to some reported cases of gastrointestinal distress possibly associated with consumption of a product you purchased from us."

70.     In reality, All Day Energy Greens was hazardous for human consumption and could cause severe, chronic illness, bodily impairment, and death—none of which were disclosed to consumers.

71.     Furthermore, the recall did not explain that NaturMed suspected Bactolac of contaminating the All Day Energy Greens product. The notice was, instead, written in such a way as to minimize the danger posed by consuming any All Day Energy Greens product.

72.     NaturMed did not otherwise publicize the All Day Energy Greens recall, either by publishing notice of the recall on its website or in other publicly accessible print or online sources.

73.     Furthermore, NaturMed knew that direct purchasers of the product commonly resold All Day Energy Greens, yet it made no effort to notify those indirect purchasers.

74.     NaturMed informed some, but not all, known retailers that it was recalling its All Day Energy Greens products. Even where it informed a retailer, however, NaturMed did not explain the danger that the product ultimately posed to consumers.

75.     After it was sued by individuals who suffered gastrointestinal distress, NaturMed finally (and belatedly) decided to conduct a more thorough investigation of the extent of its products' contamination.

76.     NaturMed conducted DNA plant species testing of All Day Energy Greens, which revealed that Bactolac included ingredients that were not disclosed on the label.

77.     The All Day Energy Greens label listed 34 plant species. DNA testing, however, identified over 92 plant species in All Day Energy Greens. In some tested lots, 15 of the ingredients that were supposed to be in the product were not detected at all.

78.     A former Bactolac employee has since testified under oath that during the relevant time period, his supervisors instructed him to blend in certain added ingredients to make All Day Energy Greens appear greener.

79.     This employee also testified that he was instructed to blend in ingredients such as Spirulina, Barley Grass, and/or Aloe Vera to make All Day Energy Greens appear greener.

80.     All Day Energy Greens Fruity calls for pineapple to be blended into the product. The Bactolac employee testified, however, that because pineapple is an expensive raw ingredient, he was often instructed to add pineapple powder instead, which is cheaper, or something else entirely, such as apple or orange.

81.     The addition of alternative ingredients was an act of fraud. Each time Bactolac shipped canisters of All Day Energy Greens to NaturMed, it provided signed certificates representing that it had strictly adhered to the product label. At least one Bactolac employee has testified that he routinely signed these certificates knowing the representations were untrue because Bactolac managers instructed him to do so.

82.     The Bactolac employee further testified to conditions in Bactolac's facility that were unsanitary, and did not comply with relevant health and safety standards. Equipment used to blend the products was not properly cleaned, allowing dirt and bacteria to be introduced into the mixing area and potentially contaminating the blend.

83.     Although NaturMed received increasing customer complaints beginning in 2014, it did not sufficiently conduct an investigation of Bactolac's practices until long after its March 2016 recall. Indeed, these steps were not taken until NaturMed had been sued by customers it sickened.

***Plaintiffs' Purchase and Use of All Day Energy Greens***

84.     Plaintiff Charles Copley purchased multiple canisters of All Day Energy Greens directly from NaturMed in 2014, with purchase and delivery occurring in the state of Virginia. Mr. Copley purchased the supplement to improve his health, and in purchasing the product he relied on representations from Defendants that it was safe, effective, immune-enhancing, and beneficial.

85.     After consuming All Day Energy Greens, Mr. Copley experienced abdominal pain and discomfort, as well as other physical symptoms of gastrointestinal illness. These symptoms were so significant they required Mr. Copley to seek treatment at a nearby hospital.

86.     On March 18, 2016, Mr. Copley was sent a recall notice via US mail from NaturMed informing him that the All Day Energy Greens he purchased in 2014 were subject to NaturMed's product recall.

87.     Plaintiff Jason Evans purchased multiple cannisters of All Day Energy Greens directly from NaturMed in 2015, with purchase and delivery occurring in the state of California. Mr. Evans purchased the supplement to improve his health, and in purchasing the product he relied on representations from Defendants that it was safe, effective, immune-enhancing, and beneficial.

88.     After consuming All Day Energy Greens, Mr. Evans experienced abdominal pain and discomfort, as well as other symptoms of gastrointestinal illness.

89.     On March 18, 2016, Mr. Evans was sent a recall notice via US mail from NaturMed informing him that the All Day Energy Greens he purchased in 2015 were subject to NaturMed's product recall.

90.     Plaintiff Humberto Garcia purchased multiple canisters of All Day Energy Greens directly from NaturMed in 2014 and 2015, with purchase and delivery occurring in the state of Texas. Mr. Garcia purchased the supplement to improve his health and energy, and in purchasing the product he relied on representations from Defendants that it was safe, effective, immune-enhancing, energy-enhancing, and beneficial.

91.     After consuming All Day Energy Greens, Mr. Garcia experienced abdominal pain and discomfort. These symptoms required Mr. Garcia to seek treatment from his physician.

92.     On March 18, 2016, Mr. Garcia was sent a recall notice via US mail from NaturMed informing him that the All Day Energy Greens he purchased in 2014 and 2015 were subject to NaturMed's product recall.

93.     Plaintiff Luz Angelina Garcia purchased multiple canisters of All Day Energy Greens directly from NaturMed in 2014 and 2015, with purchase and delivery occurring in the state of Texas. Ms. Garcia purchased the supplement to improve her health and energy, and in purchasing the product she relied on representations from Defendants that it was safe, effective, immune-enhancing, energy-enhancing, and beneficial.

94.     After consuming All Day Energy Greens, Ms. Garcia experienced abdominal pain and discomfort, as well as other physical symptoms of gastrointestinal distress. These symptoms required Ms. Garcia to seek treatment by her physician.

95.     On March 18, 2016, Ms. Garcia was sent a recall notice via US mail from NaturMed informing her that the All Day Energy Greens she purchased in 2014 and 2015 were subject to NaturMed's product recall.

96.     Plaintiff Joan McDonald purchased multiple canisters of All Day Energy Greens directly from NaturMed in 2015, with purchase and delivery occurring in the state of Oregon. Ms.

16

McDonald purchased the supplement to improve her health, and in purchasing the product she relied on representations from Defendants that it was safe, effective, immune-enhancing, and beneficial.

97.     After consuming All Day Energy Greens, Ms. McDonald experienced abdominal pain and discomfort, as well as other physical symptoms of gastrointestinal distress. These symptoms were so significant they required Ms. McDonald to seek treatment with her physician.

98.     On March 18, 2016, Ms. McDonald was sent a recall notice via US mail from NaturMed informing her that the All Day Energy Greens she purchased in 2015 were subject to NaturMed's product recall.

99.     Plaintiff John Peterson purchased multiple canisters of All Day Energy Greens directly from NaturMed in 2015, with purchase and delivery occurring in the state of South Carolina. Mr. Peterson purchased the supplement to improve his health, and in purchasing the product he relied on representations from Defendants that it was safe, effective, immune-enhancing, and beneficial.

100.    After consuming All Day Energy Greens, Mr. Peterson experienced abdominal pain and discomfort, as well as other physical symptoms of gastrointestinal distress. These symptoms were so significant they required Mr. Peterson to seek treatment at a nearby hospital.

101.    On March 18, 2016, Mr. Peterson was sent a recall notice via US mail from NaturMed informing him that the All Day Energy Greens he purchased in 2015 were subject to NaturMed's product recall.

102.    Betty Pressley purchased multiple canisters of All Day Energy Greens directly from NaturMed in 2014, with purchase and delivery occurring in the state of Alabama. Ms. Pressley purchased the supplement to improve her health and energy, and in purchasing the product she

17

relied on representations from Defendants that it was safe, effective, immune-enhancing, energy-enhancing, and beneficial.

103.    After consuming All Day Energy Greens, Ms. Pressley experienced abdominal pain and discomfort, as well as other physical symptoms of gastrointestinal distress. These symptoms required Mrs. Pressley to seek medical treatment from her primary care physician as well as a specialist.

104.    On March 18, 2016, Mrs. Pressley was sent a recall notice via US mail from NaturMed informing her that the All Day Energy Greens she purchased in 2014 were subject to NaturMed's product recall.

105.    Plaintiff Natalie Roberts purchased a canister of All Day Energy Greens directly from NaturMed in 2014, with purchase and delivery occurring in the state of Missouri. Ms. Roberts purchased the supplement to improve her health and energy, and in purchasing the product she relied on representations from Defendants that it was safe, effective, immune-enhancing, energy-enhancing, and beneficial.

106.    After consuming All Day Energy Greens, Ms. Roberts experienced abdominal pain and discomfort, as well as other physical symptoms of gastrointestinal distress. These symptoms required Ms. Roberts to seek medical treatment from her physician.

107.    On March 18, 2016, Ms. Roberts was sent a recall notice via US mail from NaturMed informing her that the All Day Energy Greens she purchased in 2014 were subject to NaturMed's product recall.

108.    Betty Skare, who is now deceased, purchased a canister of All Day Energy Greens directly from NaturMed in 2015, with purchase and delivery occurring in the state of Wisconsin. Ms. Skare purchased the supplement to improve her health and energy, and in purchasing the

18

product she relied on the representations from Defendants that it was safe, effective, immune-enhancing, energy-enhancing, and beneficial.

109.    After consuming All Day Energy Greens, Ms. Skare experienced abdominal pain and discomfort, as well as other physical symptoms of gastrointestinal distress. These symptoms were so significant that they required Ms. Skare to be hospitalized for treatment.

110.    On March 18, 2016, Ms. Skare was sent a recall notice via US mail from NaturMed informing her that the All Day Energy Greens she purchased in 2015 were subject to NaturMed's product recall.

111.    Plaintiff David Stone purchased multiple canisters of All Day Energy Greens directly from NaturMed in 2014, with purchase and delivery occurring in the state of Illinois. Mr. Stone purchased the supplement to improve his health, and in purchasing the product he relied on representations from Defendants that it was safe, effective, immune-enhancing, and beneficial.

112.    After consuming All Day Energy Greens, Mr. Stone experienced abdominal pain and discomfort, as well as other physical symptoms of gastrointestinal distress. These symptoms required Mr. Stone to seek treatment from a physician and at least one specialist.

113.    On March 18, 2016, Mr. Stone was sent a recall notice via US mail from NaturMed informing him that the All Day Energy Greens he purchased in 2014 were subject to NaturMed's product recall.

114.    Donald Wink, who is now deceased, purchased multiple canisters of All Day Energy Greens directly from NaturMed, with purchase and delivery occurring in the state of Kentucky. Mr. Wink purchased the supplement to improve his health, and in purchasing the product he relied on representations from Defendants that it was safe, effective, immune-enhancing, and beneficial.

115.    After consuming All Day Energy Greens, Mr. Wink experienced severe abdominal pain and discomfort. These symptoms required Mr. Wink to seek treatment from multiple physicians, including a gastroenterologist.

116.    On March 16, 2016, Mr. Wink was sent a recall notice via US mail from NaturMed informing him that the All Day Energy Greens he purchased were subject to NaturMed's product recall.

***NaturMed's Attempt to Evade Financial Liability***

117.    In 2016 and 2017, several lawsuits were filed against NaturMed alleging personal injury and wrongful death caused by consumption of All Day Energy Greens.

118.    These lawsuits imposed a significant financial burden on NaturMed.

119.    NaturMed was also the subject of multiple investigations into its business practices, which imposed further financial burden.

120.    By early 2017, NaturMed owed its secured lender, Fifth Third Bank, over $5 million.

121.    On April 21, 2017, NaturMed defaulted on this loan.

122.    Six days later, on April 27, 2017, IVL2 was incorporated in the state of Delaware by Don Elgie, a NaturMed board member and the original founder of NaturMed.

123.    At the time NaturMed defaulted on its loan, Elgie still owned a stake in the company and was a member of the board of directors.

124.    On May 10, 2017, Elgie and IVL2 purchased Fifth Third Bank's security interest in NaturMed for $1 million, a fraction of its worth.

125.    That same day, NaturMed and IVL2 entered into a forbearance agreement that obligated NaturMed to hire a "qualified chief restructuring officer reasonably acceptable" to IVL2 whose job would be to decide whether to liquidate NaturMed.

126.    Because he was a member of NaturMed's board and a part owner, as well as founder and at least a part owner of IVL2, Elgie was on both sides of this forbearance agreement.

127.    The forbearance agreement was executed by Elgie on behalf of IVL2.

128.    On May 12, 2017, NaturMed engaged Elgie as its chief restructuring officer with responsibility to evaluate and decide whether to liquidate NaturMed.

129.    Elgie immediately decided to liquidate NaturMed's assets and noticed a UCC sale for May 26, 2017.

130.    On May 26, 2017, IVL2 purchased NaturMed's assets for a fraction of their worth.

131.    This financial transaction was a fraudulent attempt to escape NaturMed's financial liability and transfer the assets of NaturMed to IVL2.

132.    Indeed, according to the sworn testimony of NaturMed's corporate designee in other litigation, NaturMed "dissolved" on May 27, 2017, the day after the UCC sale took place.

133.    On May 28, 2017, the day after NaturMed dissolved, Elgie and IVL2 commenced operating NaturMed's old business.

134.    IVL2 operates at NaturMed's former location, 661 E. Howards Road, Camp Verde, Arizona.

135.    IVL2 retained many key personnel from NaturMed, including NaturMed's director of operations.

136.    Because NaturMed did business as the Institute for Vibrant Living, with the initials "IVL," IVL2 was able to conveniently retain its initials, logo, and continue to seamlessly operate

21

its website, www.ivlproducts.com. IVL2 continues to sell NaturMed's products, which still bear NaturMed's "Institute for Vibrant Living" brand.

137.    The IVL2 website carried over customer reviews that pre-date its ownership of NaturMed and continues to contain customer account information from the Institute for Vibrant Living.

138.    IVL2, in short, transferred all of NaturMed's assets and operations in an effort to continue NaturMed's operations but avoid its financial liability.

139.    IVL2 has made every effort to benefit from the reputation established by NaturMed. In addition to maintaining NaturMed's logo and website, www.ivlproducts.com still contains customer reviews that pre-date IVL's ownership of NaturMed's products.

140.    IVL2 facilitated a seamless transfer of NaturMed's business, with no interruption in business operations. IVL2 is therefore liable to whatever extent NaturMed is liable in this case, for it is a mere continuation of NaturMed.

141.    Since NaturMed's dissolution and IVL2's continuation of NaturMed's business, multiple lawsuits have been filed against one or more Defendants herein. Defendants have thus had sufficient notice of the claims against them. Rather than attempting to resolve any of class members' claims, Defendants have attempted to evade responsibility for their misconduct. Indeed, NaturMed has gone to such lengths to evade responsibility that it fraudulently transferred its assets to an ostensibly separate company. In addition, individual class members, including some Plaintiffs, have sent some or all Defendants notice of their claims. In each such instance, Plaintiffs have received no satisfactory response.

## CLASS ACTION ALLEGATIONS

142.     Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

143.     Plaintiffs assert claims on behalf of a nationwide class, defined as:

**Nationwide Class**: All persons in the United States who purchased All Day Energy Greens between July 1, 2014 and the present that were manufactured and/or blended by Bactolac between January 1, 2014 and December 31, 2015.

144.     Plaintiffs also assert claims on behalf of separate statewide classes for the states of Alabama, California, Illinois, Kentucky, Missouri, Oregon, South Carolina, Texas, Virginia, and Wisconsin.

145.     The proposed statewide classes are defined as:

**Statewide [name of State] Class**: All citizens of [name of state] who purchased All Day Energy Greens between January 1, 2014 and the present that were manufactured and/or blended by Bactolac between January 1, 2014 and December 31, 2015.

146.     Excluded from the Nationwide and Statewide Classes are (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) governmental entities. Plaintiffs reserve the right to amend the definition of any Class if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

**Numerosity**

147.    Although the exact number of class members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these class members in a single action will provide substantial benefits to all parties and to the Court. Class members are readily identifiable from information in Defendants' possession, custody or control, or from sources accessible through discovery.

**Typicality**

148.    The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all class members, purchased All Day Energy Greens that were falsely marketed, manufactured, distributed, and sold by Defendants. The representative Plaintiffs, like all class members, have been damaged by Defendants' misconduct in that they have purchased a defective and/or unsafe product that was falsely marketed as a healthy dietary supplement. Furthermore, the factual bases of Defendants' misconduct are common to all class members and represent a common thread of misconduct resulting in injury to all class members.

**Adequate Representation**

149.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective and falsely marketed products.

150.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to the Classes.

**Predominance of Common Issues**

151.   There are numerous questions of law and fact common to Plaintiffs and class members that predominate over any question affecting only individual class members, the answers to which will advance resolution of the litigation as to all class members. These common legal and factual issues include:

a.   whether All Day Energy Greens contains dangerous substances not fit for human consumption;

b.   whether Defendants knew or should have known that All Day Energy Greens contained dangerous substances not fit for human consumption;

c.   whether Defendants had a duty to disclose the ingredients and/or contents of All Day Energy Greens to Plaintiffs and the Classes, including the fact that it contained dangerous substances;

d.   whether Defendants had a duty to continuously monitor and/or test that All Day Energy Greens were not defectively manufactured and/or blended, and whether Defendants failed to fulfill this duty by, *inter alia*, neglecting to test the product after it was packaged for delivery;

e.   whether Defendants omitted and/or failed to disclose material facts concerning All Day Energy Greens to Plaintiffs and class members, including the fact that it contained dangerous substances;

f.   whether Defendants violated their duty to warn Plaintiffs and the class members of the risks of consuming All Day Energy Greens, including the risks associated with the substances contained therein;

g.   whether Defendants warranted to Plaintiffs and the Class that All Day Energy Greens was fit for human consumption, safe, free from defects, and that the

supplement was manufactured using the ingredients on the label, and whether Defendants violated this warranty by delivering a defective and unsafe dietary supplement to Plaintiffs and the Class;

h.   whether All Day Energy Greens is a defective product or an unreasonably dangerous product; and

i.   whether the All Day Energy Greens manufactured and sold during the class period was adulterated and/or misbranded.

**Superiority**

152.   Plaintiffs and class members have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

153.   Absent a class action, most class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual class members' claims, it is likely that only a few class members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Defendants' misconduct will go without a remedy.

154.   Class treatment of common questions of law and fact would also be a superior method to individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

155.   Classwide declaratory relief is appropriate under Rule 23(b)(1) and (b)(2) because Defendants have acted on grounds that apply generally to the Classes, and inconsistent adjudications with respect to Defendants' liability would establish incompatible standards and

substantially impair or impede the ability of class members to protect their interests. Plaintiffs seek a judicial declaration that Defendants sold untested, contaminated, and potentially deadly dietary supplements.

## CLAIMS FOR RELIEF

### CLAIM I

### Violation of the Magnuson-Moss Warranty Act
### (15 U.S.C. § 2301 *et seq.*)

156.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

157.    This claim is brought on behalf of Plaintiffs and the Nationwide Class.

158.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

159.    Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

160.    All Day Energy Greens dietary supplements are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

161.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an express or implied warranty.

162.    The representations on Defendants' packaging created an express warranty that the contents of All Day Energy Greens conform to the presentations on the package. Specifically, Defendants expressly warranted that All Day Energy Greens was fit for human consumption, safe, "immune-enhancing," and promoted healthy digestive function. Defendants also represented that the supplement was manufactured using the ingredients appearing on the label.

27

163.    Defendants' warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

164.    In addition, Defendants provided Plaintiffs with an implied warranty of merchantability in connection with the purchase of All Day Energy Greens. As part of their implied warranty of merchantability, Defendants promised to provide goods that were free from defects and fit for their ordinary purpose as dietary supplements. These warranties are implied warranties within the meaning of 15 U.S.C. § 2301(7).

165.    Defendants breached both the express and implied warranties, as described in detail herein, and are therefore liable to Plaintiffs pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, All Day Energy Greens were useless dietary supplements that provided no health benefits, did not enhance or improve a consumer's energy level, did not aid digestive function, were not blended as labeled, and in fact caused gastrointestinal distress.

166.    The Magnuson-Moss Warranty Act provides a claim for relief for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

167.    In its capacity as a warrantor, Defendants had knowledge of the defects in their All Day Energy Greens products. Any effort by Defendants to limit the warranties in a manner that would exclude coverage of their All Day Energy Greens products is unconscionable, and any such effort to disclaim, or otherwise limit, liability is null and void.

168.    Plaintiffs and each of the Nationwide Class members have had sufficient direct dealings with Defendant NaturMed or its agents to establish privity of contract between NaturMed and Plaintiffs. Because Plaintiffs are in privity of contract with NaturMed, they are legally in privity of contract with NaturMed's successor, IVL2.

28

169.     Furthermore, although Plaintiffs did not deal directly with Defendant Bactolac, Bactolac manufactured and blended All Day Energy Greens pursuant to an agreement in which Plaintiffs are intended third-party beneficiaries. Plaintiffs were intended to be the ultimate consumers of All Day Energy Greens and thus have rights under express or implied warranties that Bactolac provided to NaturMed. In other words, the warranties were designed for and intended to benefit the consumers only. Bactolac knew and understood that the product it was blending was intended for use by consumers, and therefore when it added ingredients to the product that were not included on the label and/or contaminated the product, it knew and understood it was breaching warranties made to Plaintiffs and the Class.

170.     Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

171.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the Nationwide Class, seek all damages permitted by law, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the Nationwide Class members in connection with the commencement and prosecution of this action.

172.    Further, Plaintiffs and the Nationwide Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1). Specifically, Plaintiffs and the Nationwide Class seek a declaration that Defendants sold untested, contaminated, and potentially deadly dietary supplements.

## CLAIM II

### Violation of the Arizona Consumer Fraud Act
### (ARIZ. REV. STAT. § 44-1521 *et seq.*)

173.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

174.    This claim is brought on behalf of Plaintiffs and the Nationwide Class against Defendants NaturMed and IVL2  (collectively, for purposes of this claim, "Defendants").

175.    Plaintiffs and Defendants are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), ARIZ. REV. STAT. § 44-1521(6).

176.    All Day Energy Greens dietary supplements are "merchandise" within the meaning of ARIZ. REV. STAT. § 44-1521(5).

177.    The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, . . . misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be unlawful practice." ARIZ. REV. STAT. § 44-1522(A).

178.    Defendants' actions, as set forth herein, occurred in the conduct of trade or commerce.

179.    In the course of their business, Defendants concealed the true nature and safety risks posed by consumption of All Day Energy Greens, and otherwise engaged in activities with a

tendency or capacity to deceive. Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of All Day Energy Greens. For example, the fact that All Day Energy Greens was not fit for human consumption, and that consumption of All Day Energy would not result in "immune-enhancing" effects and/or promote healthy digestive function would be material to a reasonable consumer. So too would it be material that All Day Energy Greens was not blended as labeled and/or packaged.

180.    By failing to disclose and by actively concealing these material facts to consumers, including Plaintiffs, Defendants engaged in unfair and deceptive business practices in violation of the Arizona CFA.

181.    In the course of Defendants' business, they willfully failed to disclose and actively concealed the safety risks posed by consumption of All Day Energy Greens.

182.    Defendants knew or should have known that their conduct violated the Arizona CFA.

183.    Defendants had a duty to disclose the true nature of and risks posed by consumption of All Day Energy Greens because Defendants (i) possessed exclusive knowledge regarding the safety risks and ineffectiveness of All Day Energy Greens; (ii) intentionally concealed the foregoing from Plaintiffs; and (iii) made incomplete representations about the safety and effectiveness of All Day Energy Greens, while purposefully withholding material facts from Plaintiffs that contradicted those representations.

184.    Furthermore, to the extent Defendants relied on Bactolac to manufacture and blend All Day Energy Greens in a proper fashion, they failed in their duty to ensure Bactolac complied with its contractual obligations.

185.    Because of Defendants' unlawful concealment and failure to provide the product is promised to provide, Plaintiffs were deprived the benefit of their bargain when they purchased All Day Energy Greens. Indeed, had Plaintiffs been aware of the defects in the dietary supplements, they would not have purchased them.

186.    As a direct and proximate result of Defendants' violations of the Arizona CFA, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged herein. Plaintiffs seek monetary relief against Defendants in an amount to be determined at trial. Plaintiffs also seek punitive damages because Defendants engaged in aggravated and outrageous conduct with an evil mind, and also seek any other just and proper relief available under the Arizona CFA.

## CLAIM III

### Violation of New York General Business Law
### (N.Y. GEN. BUS. LAW § 349 *et seq.*)

187.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

188.    This claim is brought on behalf of Plaintiffs and the Nationwide Class against Defendant Bactolac.

189.    Plaintiffs are "persons" within the meaning of N.Y. GEN. BUS. LAW § 349.

190.    Bactolac is a "person[]," "firm[]," "corporation[]," or "association[]" within the meaning of N.Y. GEN. BUS. LAW § 349.

191.    New York General Business Law § 349 ("NYGBL § 349") prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service

in the state of New York. Bactolac's conduct, as described herein, constitutes "deceptive acts and practices" within the meaning of this statute. Further, Bactolac's deceptive acts and practices, which were intended to mislead consumers who were attempting to purchase dietary supplements that would contribute to their health and well-being, was consumer-oriented conduct.

192.    Bactolac violated the NYGBL when it defectively manufactured and/or blended All Day Energy Greens, and applied packaging labels that were false and/or materially misleading. Bactolac then represented, through warranties and other express representations set forth herein that All Day Energy Greens had characteristics and benefits that the product did not actually have.

193.    Bactolac violated the NYGBL when it falsely represented, through warranties and other express representations that All Day Energy Greens was of a certain quality or standard when it was not.

194.    Bactolac violated the NYGBL by concealing and/or failing to disclose to Plaintiffs and the Class the defects associated with All Day Energy Greens.

195.    Bactolac violated the NYGBL by actively misrepresenting in, and/or concealing and omitting from, its communications and/or representations, material information regarding All Day Energy Greens. The material information included:

    a.   that All Day Energy Greens, as blended, was not fit for human consumption and, indeed, was potentially toxic;

    b.   that All Day Energy Greens, as blended, did not contain the ingredients listed on its label; and

    c.   that the defective nature of All Day Energy Greens would not become apparent until after a consumer ingested the product.

196.     As a direct and proximate cause of Bactolac's violations of the NYGBL, Plaintiffs and members of the Class have suffered injury in fact and/or actual damage, in that they purchased a dietary supplement that was defective, not fit for human consumption, and that would not produce the results promised by the product advertising, marketing, and representations.

197.     Pursuant to NYGBL § 349(h), Plaintiffs, on behalf of themselves and all others similarly situated, seek monetary relief against Bactolac measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $50 for each Plaintiff and member of the Class. Because Bactolac's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover three times actual damages, up to $1,000, for each Plaintiff and Class member.

198.     Plaintiffs also seek punitive damages, attorneys fees, and any other just and proper relief available under NYGBL § 349.

## CLAIM IV

### Fraudulent Concealment

199.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

200.     This claim is brought on behalf of Plaintiffs and each of the statewide classes identified herein.

201.     As alleged herein, All Day Energy Greens was manufactured with ingredients that posed health risks rendering the product unfit for human consumption.

202.     Defendants owed a duty to Plaintiffs and members of the statewide classes to disclose all material facts, including the actual ingredients contained in All Day Energy Greens, as well as the risks associated with consumption of All Day Energy Greens. Defendants had a duty

to disclose information because it was known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable by Plaintiffs. Defendants also bore a duty because they made affirmative representations about the quality, health benefits, and safety of All Day Energy Greens, and these representations were misleading, deceptive, and incomplete without the disclosure of the defects in the product. Defendants failed to make the disclosures and/or concealed material information they were under a duty to provide. Indeed, had they accurately disclosed the ingredients of All Day Energy Greens and the risks posed by consumption of All Day Energy Greens, Plaintiffs and members of the statewide classes would not have purchased the product.

203.    Furthermore, Defendants knew or should have known that All Day Energy Greens did not fulfill the representations made on its label and/or in Defendants' advertisements, and that the product was not blended as labeled. Defendants knew or should have known that All Day Energy Greens was not safe for human consumption and could cause detrimental health outcomes.

204.    Defendant Bactolac knowingly and purposefully added ingredients to All Day Energy Greens blends that were not listed on the packaging label. It then falsely certified that the product contained only ingredients listed on the label. Bactolac knew these representations were fraudulent, yet continued to make them. Indeed, when NaturMed expressed concern regarding increasing customer complaints in 2014, Bactolac's president insisted that Bactolac blended the product in strict conformance with the product label. This was a falsehood.

205.    Defendants actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits, and did so at the expense of Plaintiffs and members of the statewide classes.

206.     As a direct and proximate result of Defendants' acts and/or omissions, Plaintiffs and the statewide class members sustained damage because they purchased a worthless and/or defective product.

207.     Accordingly, Defendants are liable to Plaintiffs in an amount to be proven at trial.

208.     Moreover, Defendants acted and/or failed to act with reckless disregard for the safety and well-being of Plaintiffs and the statewide class members, and Plaintiffs are therefore entitled to an award of exemplary and punitive damages for their misconduct, as well as any other just and proper relief, which amount is to be determined according to proof.

**CLAIM V**

**Violation of the Alabama Deceptive Trade Practices Act**
**(ALA. CODE § 8-19-1 *et seq*.)**

209.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

210.     This claim is brought on behalf of Plaintiff Betty Pressley and members of the Alabama statewide class.

211.     Plaintiff and class members are "consumers" within the meaning of ALA. CODE § 8-19-3(2).

212.     Plaintiff and Defendants are "persons" within the meaning of ALA. CODE § 8-19-3(5).

213.     All Day Energy Greens are "goods" within the meaning of ALA. CODE § 8-19-3(3).

214.     At all times relevant hereto, Defendants were engaged in "trade and commerce" within the meaning of ALA. CODE § 8-19-3(8).

215.     The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including: "(5) Representing that goods or services have

36

sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have"; "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." ALA. CODE § 8-19-5. By misrepresenting the actual ingredients of its All Day Energy Greens product, manufacturing the product with unsafe ingredients, and promoting All Day Energy Greens as safe and healthy products that would contribute to specific outcomes, Defendants engaged in deceptive business practices prohibited by the Alabama DTPA.

216.     Defendants misrepresented the ingredients, safety, and health benefits of All Day Energy Greens when in fact they knew that All Day Energy Greens was not healthy or safe, and would not deliver the benefits that were advertised.

217.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the statewide class, about the true safety and reliability of All Day Energy Greens.

218.     Defendants made material statements about the health benefits of All Day Energy Greens that were either false or misleading.

219.     Because Defendants fraudulently and/or negligently concealed the true nature of All Day Energy Greens, they deprived Plaintiff and the statewide class of the benefit of their bargain. Had Plaintiff and the statewide class been aware of the defect in the product, they would not have purchased the defective All Day Energy Greens.

220.     As a direct and proximate result of Defendants' violations of the Alabama DTPA, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged herein.

221.   Pursuant to ALA. CODE § 8-19-10, Plaintiffs seek monetary relief against Defendants as measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each Plaintiff.

## CLAIM VI

### Breach of Express Warranty
### (ALA. CODE § 7-2-313)

222.   Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

223.   This claim is brought on behalf of Plaintiff Betty Pressley and members of the Alabama statewide class.

224.   Plaintiff and Alabama class members are "buyers" within the meaning of the Alabama Commercial Code.

225.   Defendants are "sellers" within the meaning of the Alabama Commercial Code.

226.   All Day Energy Greens are "goods" within the meaning of the Alabama Commercial Code.

227.   The representations on Defendants' packaging created an express warranty between buyer and seller under Alabama law. Specifically, Defendants represented that All Day Energy Greens were fit for human consumption, safe, "immune-enhancing," and that the product promoted healthy digestive function. Defendants also represented that the supplement was manufactured using the ingredients appearing on the label.

228.   These representations constituted affirmations of fact and/or promises and/or product descriptions that related to All Day Energy Greens and became part of the basis of the bargain by which Plaintiff and members of the Alabama class chose to purchase the product.

38

229.    Furthermore, Defendants knew or should have known that All Day Energy Greens did not fulfill the representations made on its label and/or in Defendants' advertisements. Defendants knew or should have known that All Day Energy Greens was not safe for human consumption, could cause detrimental health outcomes, and would not deliver the benefits represented by Defendants.

230.    Indeed, All Day Energy Greens was not safe for humans to consume and has caused people to become ill and/or die after consumption.

231.    As a direct and/or proximate result of the Defendants' acts and/or omissions, Plaintiff and the Alabama class members have suffered injuries, damages, and losses as alleged herein.

232.    Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and members of the Alabama class are entitled to an award of exemplary and punitive damages, according to proof.

## CLAIM VII

### Breach of Implied Warranty
(ALA. CODE § 7-2-314)

233.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

234.    This claim is brought on behalf of Plaintiff Betty Pressley and members of the Alabama statewide class.

235.    Plaintiff and Alabama class members are "buyers" within the meaning of the Alabama Commercial Code.

236.    Defendants are "merchants" with respect to All Day Energy Greens within the meaning of ALA. CODE § 7-2-314.

237.     ALA. CODE § 7-2-314 provides a claim for relief for consumers who are damaged by the failure of a seller of goods to comply with an implied warranty of merchantability. As part of their implied warranty of merchantability, Defendants warranted that All Day Energy Greens was a dietary supplement that was safe and fit for its ordinary purpose. As alleged herein, All Day Energy Greens was defective and unfit for human consumption.

238.     Furthermore, pursuant to ALA. CODE § 7-2-314(2)(f), goods are not merchantable where they fail to conform to the promises or affirmations of fact made on the container or label. Here, the label on All Day Energy Greens represented that the product was, *inter alia*, "immune-enhancing," promoted healthy digestive function, and was safe for human consumption. None of these representations were true.

239.     As a direct and/or proximate result of Defendants' acts and/or omissions, Plaintiff and members of the Alabama class have suffered injuries, damages, and losses as alleged herein.

240.     Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and members of the Alabama class are entitled to an award of exemplary and punitive damages, according to proof.

## CLAIM VIII

### Violation of the California Consumer Legal Remedies Act
### (CAL. CIV. CODE § 1750 *et seq.*)

241.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

242.     This claim is brought on behalf of Plaintiff Jason Evans and members of the California statewide class.

243.     This cause of action is brought pursuant to the California Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.* ("CLRA").

244.    Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transaction that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

245.    Plaintiff and other class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

246.    The All Day Energy Greens that Plaintiff and other similarly situated class members purchased from Defendants were "goods" within the meaning of the California Civil Code § 1761(a).

247.    By engaging in the actions, representations and conduct set forth herein, Defendants have violated §§ 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA. In violation of the California Civil Code § 1770(a)(2), Defendants' acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of All Day Energy Greens. In violation of California Civil Code § 1770(a)(5), Defendants' acts and practices constitute improper representations that All Day Energy Greens have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code § 1770(a)(7), Defendants' acts and practices constitute improper representations that All Day Energy Greens are of a particular standard, quality, or grade when they are of another. In violation of California Civil Code § 1770(a)(8), Defendants have disparaged the goods, services, or business of another by false or misleading representations of fact. In violation of California Civil Code § 1770(a)(9), Defendants advertised All Day Energy Greens with intent not to sell them as advertised. Specifically, in violation of sections 1770 (a)(2), (a)(5), (a)(7), and (a)(9), Defendants' acts and practices led customers to falsely believe that All Day Energy Greens were fit for human consumption and would have beneficial health effects.

248.     Plaintiff seeks, pursuant to California Civil Code § 1780(a)(3), on behalf of herself and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendants' acts and practices.

249.     Plaintiff also requests that this Court award him his costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

## CLAIM IX

### False Advertising in Violation of the California Business and Professions Code
(CAL. BUS. & PROF. CODE § 17500 *et seq.*)

250.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

251.     This claim is brought on behalf of Plaintiff Jason Evans and the members of the California statewide class.

252.     Beginning at an exact date unknown to Plaintiff, but within three years preceeding the filing of the complaint, Defendants made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of All Day Energy Greens.

253.     Defendants made representations and statements (by omission and commission) that led reasonable consumers to believe that they were purchasing products that would have beneficial health effects, as described herein. Defendants deceptively failed to inform Plaintiff, and those similarly situated, that All Day Energy Greens had no beneficial health effects, and that consuming All Day Energy Greens was dangerous and could cause gastrointestinal distress.

254.     Plaintiff and those similarly situated relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth herein. Had Plaintiff and those similarly situated been

42

adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, refraining from purchasing All Day Energy Greens.

255.    Defendants' acts and omissions were likely to deceive the general public.

256.    Defendants' engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500 *et seq.* of the California Business and Professions Code.

257.    The aforementioned practices, which Defendants used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

258.    Plaintiff seeks, on behalf of himself and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

259.    Plaintiff and those similarly situated are further entitled to and do seek a declaration that the above-described practices constitute false, misleading and deceptive advertising.

260.    As a direct and proximate result of Defendants' actions, Plaintiff and the other members of the class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount that will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

## CLAIM X

**Unfair, Unlawful and Deceptive Trade Practices**
**In Violation of the California Business and Professions Code**
**(Cal. Bus. & Prof. Code § 17200 *et seq.*)**

43

261.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

262.    This claim is brought on behalf of Plaintiff Jason Evans and the members of the California statewide class.

263.    Within four years preceding the filing of the complaint, and at all times mentioned herein, Defendants have engaged in unfair, unlawful, and deceptive trade practices in California by engaging in the unfair, deceptive, and unlawful business practices described herein. In particular, Defendants have engaged in unfair, unlawful, and deceptive trade practices by, without limitation, the following:

      a.   Deceptively representing to Plaintiff, and those similarly situated, that All Day Energy Greens were suitable for human consumption;

      b.   Failing to inform Plaintiff, and those similarly situated, that All Day Energy Greens were not suitable for human consumption and, indeed, were dangerous if consumed by humans;

      c.   Engaging in fraud, deceit, and misrepresentation, as described herein;

      d.   Violating the CLRA as described herein; and

      e.   Violating the False Advertising Law as described herein.

264.    Plaintiff and those similarly situated relied to their detriment on Defendants' unfair, deceptive and unlawful business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by not purchasing All Day Energy Greens.

265.    Defendants' acts and omissions were likely to deceive the general public.

266.     Defendants engaged in these unfair practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200 *et seq.* of the California Business and Professions Code.

267.     The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

268.     Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive trade practices complained of herein, plus interest thereon.

269.     Plaintiff and those similarly situated are further entitled to and do seek a declaration that the above-described trade practices are unfair, unlawful and/or fraudulent.

270.     As a direct and proximate result of such actions, Plaintiff and the other members of the class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount that will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

271.     As a direct and proximate result of the actions described herein, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount that will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

## CLAIM XI

### Violation of the Illinois Consumer Fraud and Deceptive Practices Act
### (815 ILL. COMP. STAT. 505/1 *et seq.*)

272.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

273.    This claim is brought on behalf of Plaintiff David Stone and members of the Illinois statewide class.

274.    Plaintiff and other members of the Illinois statewide class, as purchasers of All Day Energy Greens, are consumers within the meaning of the Illinois Consumer Fraud and Deceptive Practices Act ("Illinois Consumer Fraud Act").

275.    Defendants' business activities, as described herein, involve trade or commerce within the meaning of the Illinois Consumer Fraud Act, are addressed to the market generally, and otherwise implicate consumer protection concerns.

276.    The allegations set forth herein constitute unfair methods of competition and unfair or deceptive acts or practices in violation of the Illinois Consumer Fraud Act.

277.    The likelihood, and the possibility, that All Day Energy Greens were not safe for human consumption, did not promote healthy digestion, were not "immune-enhancing," and were otherwise defective was a material fact of which each class member should have been informed before purchasing All Day Energy Greens.

278.    Defendants owed Plaintiff a duty to disclose the defective nature of All Day Energy Greens because Defendants possessed exclusive knowledge regarding the manufacture of the product. Defendants' failure to inform consumers, including Plaintiff, of the risk that All Day Energy Greens were not safe for human consumption and that consumption of All Day Energy Greens would not generate the results represented by Defendants was likely to deceive reasonable consumers.

279.   Defendants knowingly concealed and/or suppressed material facts from Plaintiff and the members of the Illinois class.

280.   Defendants misrepresented that All Day Energy Greens was safe for human consumption and made representations on its labeling and advertisements that it knew consumers would rely upon when making purchasing decisions. Defendants' representations, as set forth herein, were material and false because All Day Energy Greens was not safe for human consumption and was otherwise worthless and did not provide the health benefits promised by Defendants.

281.   Defendants' material misrepresentations constitute an unconscionable commercial practice, deception, fraud, false promise, and misrepresentation of a material fact as to the nature of the goods it sold, in violation of the Illinois Consumer Fraud Act.

282.   Once Defendants had any reason to believe that All Day Energy Greens were unsafe and/or would not deliver the benefits promised by Defendants, Plaintiff and other consumers were entitled to immediate disclosure of those facts.

283.   Defendants intended that Plaintiff and members of the Illinois class would rely on their deceptive representations, all the while unaware of the material facts described herein. This conduct constitutes consumer fraud within the meaning of the Illinois Consumer Fraud Act.

284.   Plaintiff and members of the Illinois class paid money to purchase All Day Energy Greens but did not obtain the full value of the advertised goods. If Plaintiff and members of the Illinois class had known of the true nature of All Day Energy Greens, they would not have purchased the product or paid the price they paid for it.

285.    Plaintiff and members of the Illinois class are therefore entitled to recover compensatory damages and other relief, including costs and fees, as provide under the Illinois Consumer Fraud Act.

## CLAIM XII

### Breach of Express Warranty
### (810 ILL. COMP. STAT. 5/2-313)

286.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

287.    This claim is brought on behalf of Plaintiff David Stone and the members of the Illinois statewide class.

288.    Plaintiff and Illinois class members are "buyers" within the meaning of the Illinois Commercial Code.

289.    Defendants are "sellers" within the meaning of the Illinois Commercial Code.

290.    All Day Energy Greens are "goods" within the meaning of the Illinois Commercial Code.

291.    The representations on Defendants' packaging created an express warranty between buyer and seller under Illinois law. Specifically, Defendants represented that All Day Energy Greens were fit for human consumption, safe, "immune-enhancing," and that the product promoted healthy digestive function. Defendants also represented that the supplement was manufactured using the ingredients on the label.

292.    These representations constituted affirmations of fact and/or promises and/or product descriptions that related to All Day Energy Greens and became part of the basis of the bargain by which Plaintiff and members of the Illinois class chose to purchase the product.

48

293.    Furthermore, Defendants knew or should have known that All Day Energy Greens did not fulfill the representations made on its label and/or in Defendants' advertisements. Defendants knew or should have known that All Day Energy Greens was not safe for human consumption, could cause detrimental health outcomes, and would not deliver the benefits represented by Defendants.

294.    Indeed, All Day Energy Greens was not safe for humans to consume and has caused people to become ill and/or die after consumption.

295.    As a direct and/or proximate result of the Defendants' acts and/or omissions, Plaintiff and the Illinois class members have suffered injuries, damages, and losses as alleged herein.

296.    Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and members of the Illinois class are entitled to an award of exemplary and punitive damages, according to proof.

## CLAIM XIII

### Breach of Implied Warranty
### (810 ILL. COMP. STAT. 5/2-314)

297.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

298.    This claim is brought on behalf of Plaintiff David Stone and members of the Illinois statewide class.

299.    Plaintiff and Illinois class members are "buyers" within the meaning of the Illinois Commercial Code.

300.    Defendants are "merchants" with respect to All Day Energy Greens within the meaning of 810 ILL. COMP. STAT. 5/2-314.

301.    810 ILL. COMP. STAT. 5/2-314 provides a claim for relief for consumers who are damaged by the failure of a seller of goods to comply with an implied warranty of merchantability. As part of their implied warranty of merchantability, Defendants warranted that All Day Energy Greens was a dietary supplement that was safe and fit for its ordinary purpose. As alleged herein, All Day Energy Greens was defective and unfit for human consumption.

302.    Furthermore, pursuant to 810 ILL. COMP. STAT. 5/2-314(2)(f), goods are not merchantable where they fail to conform to the promises or affirmations of fact made on the container or label. Here, the label on All Day Energy Greens represented that the product was, *inter alia*, "immune-enhancing," promoted healthy digestive function, and was safe for human consumption. None of these representations were true.

303.    As a direct and/or proximate result of Defendants' acts and/or omissions, Plaintiff and members of the Illinois class have suffered injuries, damages, and losses as alleged herein.

304.    Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless, and, thereby, Plaintiff and members of the Illinois class are entitled to an award of exemplary and punitive damages, according to proof.

## CLAIM XIV

### Violation of the Kentucky Consumer Protection Act
### (KY. REV. STAT. § 367.170 *et seq.*)

305.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

306.    This claim is brought on behalf of Plaintiff Kaye Wink, individually and as next of kin of Donald Wink, deceased, and the Kentucky statewide class.

307.    Plaintiff previously brought this claim against Defendant NaturMed and Bactolac in a complaint filed in the Western District of Kentucky. *See Wink v. NaturMed, Inc.*, No. 4:16-

cv-00090 (W.D. Ky.). Defendants NaturMed and Bactolac both answered that complaint. Plaintiff dismissed her claim without prejudice and thereafter joined this lawsuit.

308.    Plaintiff and the members of the Kentucky statewide class are consumers, purchasers, or other persons entitled to the protection of the Kentucky Consumer Protection Act ("Kentucky CPA"), KY. REV. STAT. ANN. § 367.170 *et seq*.

309.    At all relevant times, Defendants violated the Kentucky CPA by the use of false and misleading representations or omissions of material fact in connection with the marketing, promotion, labeling, and sale of All Day Energy Greens.

310.    The Kentucky CPA declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful. Defendants violated the KCPA in the manner described herein.

311.    By reason of such violations and pursuant to the Kentucky CPA, Plaintiff and members of the Kentucky statewide class were deprived the benefit of their bargain. Plaintiff and members of the Kentucky statewide class are entitled to recover all monies paid for the defective All Day Energy Greens, and to recover any and all consequential damages recoverable under the law.

312.    Privity existed between Plaintiff and Defendants, and between members of the Kentucky statewide class and Defendants.

313.    In connection with the sale of All Day Energy Greens to both Plaintiff and members of the Kentucky statewide class, Defendants, through their employees, agents and representatives, violated the Kentucky CPA and other consumer protection statutes by engaging in unfair or deceptive acts or practices; failing to disclose that All Day Energy Greens included dangerous substances and failing to adequately and fully compensate consumers.

314.    As a direct and proximate result of Defendants' unfair and/or deceptive acts or practices, Plaintiffs and members of the Kentucky statewide class were damaged.

315.    Pursuant to the Kentucky CPA, Plaintiff is entitled to all damages the Court deems necessary and proper, including treble damages for Defendants' intentional and systematic actions taken in bad faith, as well as all reasonable attorneys' fees and costs.

## CLAIM XV

### Breach of Express Warranty
(KY. REV. STAT. § 355.2-313)

316.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

317.    This claim is brought on behalf of Plaintiff Kaye Wink, individually and as next of kin of Donald Wink, deceased, and members of the Kentucky statewide class.

318.    Plaintiff previously brought this claim against Defendant NaturMed and Bactolac in a complaint filed in the Western District of Kentucky. *See Wink v. NaturMed, Inc.*, No. 4:16-cv-00090 (W.D. Ky.). Defendants NaturMed and Bactolac both answered that complaint. Plaintiff dismissed her claim without prejudice and thereafter joined this lawsuit.

319.    Privity existed between Plaintiff and Defendants, and between members of the Kentucky statewide class and Defendants.

320.    The representations on the packaging of All Day Energy Greens created an express warranty that the contents conformed to the presentations of the package, including that All Day Energy Greens is fit for consumption by human beings, under both KY. REV. STAT. § 355.2-313 and common law. Said representations include, but are not limited to, the ingredient list on the product label and claims regarding All Day Energy Greens being safe, "immune-enhancing," and promoting healthy digestive function.

52

321.     Plaintiff and members of the Kentucky statewide class reasonably and foreseeably relied on this warranty in the contract for purchase of All Day Energy Greens for the purpose of human consumption, such that the warranty became a basis of the bargain by which Plaintiff and the Kentucky statewide class members chose to purchase All Day Energy Greens.

322.     All Day Energy Greens was not safe for human beings to consume and has caused people to become ill and/or die after consumption.

323.     As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff and the Kentucky statewide class members have suffered injuries, damages, and losses as alleged in this Complaint.

324.     Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and the Kentucky statewide class members are entitled to an award of exemplary and punitive damages, according to proof.

## CLAIM XVI

### Breach of Implied Warranty
### (KY. REV. STAT. § 355.2-314)

325.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

326.     This claim is brought on behalf of Kaye Wink, individually and as next of kin of Donald Wink, deceased, and the members of the Kentucky statewide class.

327.     Plaintiff previously brought this claim against Defendant NaturMed and Bactolac in a complaint filed in the Western District of Kentucky. *See Wink v. NaturMed, Inc.*, No. 4:16-cv-00090 (W.D. Ky.). Defendants NaturMed and Bactolac both answered that complaint. Plaintiff dismissed her claim without prejudice and thereafter joined this lawsuit.

328.    Plaintiff purchased All Day Energy Greens manufactured and distributed by Defendants based on the implied understanding that All Day Energy Greens was fit for Plaintiff to consume. Privity existed between Plaintiff and Defendants, and between members of the Kentucky statewide class and Defendants.

329.    All Day Energy Greens was not safe for human beings to consume and has caused individuals, including Donald Wink, to become ill and/or die after consumption.

330.    All Day Energy Greens constitutes a "good" within the meaning of KY. REV. STAT. § 355.2-105(1).

331.    Pursuant to KY. REV. STAT. § 355.2-314 and Kentucky common law, Defendants' conduct as described herein constitutes a breach of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose in that All Day Energy Greens is dangerous and not fit for its purpose of human consumption.

332.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff and members of the Kentucky statewide class have suffered injuries, damages, and losses as alleged in this Complaint.

333.    Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and members of the Kentucky statewide class are entitled to an award of exemplary and punitive damages, according to proof.

## CLAIM XVII

### Violation of the Missouri Merchandising Practices Act
### (MO. REV. STAT. § 407.010 *et seq.*)

334.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

335.     This claim is brought on behalf of Plaintiff Natalie Roberts and the Missouri statewide class.

336.     Plaintiff and Defendants are "persons" within the meaning of MO. REV. STAT. § 407.010.

337.     Defendants engaged in "trade" or "commerce" in the State of Missouri within the meaning of MO. REV. STAT. § 407.010(7).

338.     The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." MO. REV. STAT. § 407.020.

339.     In the course of its business, Defendants misrepresented, concealed, and/or omitted material facts from their representations regarding All Day Energy Greens. By failing to disclose these material facts, Defendants deprived consumers, including Plaintiff, of material facts about the safety and effectiveness of All Day Energy Greens. By failing to disclose all material facts about the safety and effectiveness of All Day Energy Greens, Defendants curtailed or reduced the ability of consumers to take notice of material facts about the product and/or affirmatively operated to hide or keep those facts from consumers. 15 MO. CODE OF SERV. REG. § 60-9.110.

340.     By failing to disclose and by actively concealing the defects and ineffectiveness of All Day Energy Greens, which Defendants marketed as safe, fit for human consumption, and with specific positive health effects, Defendants engaged in unfair and deceptive business practices in violation of the Missouri MPA.

341.    Defendants' unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and effectiveness of All Day Energy Greens.

342.    Plaintiff and members of the Missouri class suffered ascertainable loss caused by Defendants' misrepresentations and failure to disclose the defects in All Day Energy Greens. Had they known the truth about All Day Energy Greens, Plaintiff and members of the Missouri class would not have purchased the product. As a direct and proximate result of Defendants' violations of the Missouri MPA, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged herein.

343.    Defendants are liable to Plaintiff and members of the Missouri class in an amount to be proven at trial, including attorneys' fees, costs, punitive damages, and any other just and proper relief under Missouri law.

## CLAIM XVIII

### Breach of Express Warranty
### (MO. REV. STAT. § 400.2-313)

344.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

345.    This claim is brought on behalf of Plaintiff Natalie Roberts and the Missouri statewide class.

346.    Plaintiff and Missouri class members are "buyers" within the meaning of Missouri law.

347.    Defendants are "sellers" within the meaning of Missouri law.

348.    All Day Energy Greens are "goods" within the meaning of Missouri law.

349.    The representations on Defendants' packaging created an express warranty between buyer and seller under Missouri law. Specifically, Defendants represented that All Day Energy Greens were fit for human consumption, safe, "immune-enhancing," and that the product promoted healthy digestive function. Defendants also represented that the supplement was manufactured using the ingredients appearing on the label.

350.    These representations constituted affirmations of fact and/or promises and/or product descriptions that related to All Day Energy Greens and became part of the basis of the bargain by which Plaintiff and members of the Missouri class chose to purchase the product.

351.    Furthermore, Defendants knew or should have known that All Day Energy Greens did not fulfill the representations made on its label and/or in Defendants' advertisements. Defendants knew or should have known that All Day Energy Greens was not safe for human consumption, could cause detrimental health outcomes, and would not deliver the benefits represented by Defendants.

352.    Indeed, All Day Energy Greens was not safe for humans to consume and has caused people to become ill and/or die after consumption.

353.    As a direct and proximate result of the Defendants' acts and/or omissions, Plaintiff and the Missouri class members have suffered injuries, damages, and losses as alleged herein.

354.    Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and members of the Missouri class are entitled to an award of exemplary and punitive damages, according to proof.

### CLAIM XIX

### Breach of Implied Warranty
### (MO. REV. STAT. § 400.2-314)

57

355.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

356.    This claim is brought on behalf of Plaintiff Natalie Roberts and the Missouri statewide class.

357.    Plaintiff and Missouri class members are "buyers" within the meaning of Missouri law.

358.    Defendants are "merchants" with respect to All Day Energy Greens within the meaning of MO. REV. STAT. § 400.2-314.

359.    MO. REV. STAT. § 400.2-314 provides a claim for relief for consumers who are damaged by the failure of a seller of goods to comply with an implied warranty of merchantability. As part of their implied warranty of merchantability, Defendants warranted that All Day Energy Greens was a dietary supplement that was safe and fit for its ordinary purpose. As alleged herein, All Day Energy Greens was defective and unfit for human consumption.

360.    Furthermore, pursuant to MO. REV. STAT. § 400.2-314(2)(f), goods are not merchantable where they fail to conform to the promises or affirmations of fact made on the container or label. Here, the label on All Day Energy Greens represented that the product was, *inter alia*, "immune-enhancing," promoted healthy digestive function, and was safe for human consumption. None of these representations were true.

361.    As a direct and/or proximate result of Defendants' acts and/or omissions, Plaintiff and members of the Missouri class have suffered injuries, damages, and losses, as alleged herein.

362.    Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and members of the Missouri class are entitled to an award of exemplary and punitive damages, according to proof.

**CLAIM XX**

**Violation of the Oregon Unfair Trade Practices Act**
**(OR. REV. STAT. § 646.608 *et seq.*)**

363.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

364.    This claim is brought on behalf of Plaintiff Joan McDonald and the Oregon statewide class.

365.    Defendants willfully, recklessly, and/or negligently violated sections 646.608(1)(e), (g), and (u) of the Oregon Unfair Trade Practices Act ("OUTA") by falsely labeling and/or marketing All Day Energy Greens as safe and healthy for human consumption when, in reality, the product provided no health benefits and posed significant danger to human health.

366.    In contravention of § 646.608(1)(e), Defendants represented that All Day Energy Greens had characteristics, ingredients, uses, benefits, and/or qualities that they did not have, as described herein.

367.    In contravention of § 646.608(1)(g), Defendants represented that All Day Energy Greens were of a particular standard, quality or grade when they were not.

368.    In contravention of § 646.608(1)(u), Defendants engaged in unfair and/or deceptive trade or commerce when they falsely labeled and/or marketed All Day Energy Greens for consumer use.

369.    As a result of Defendants' willful, reckless and/or negligent violations of the OUTA, Plaintiff and members of the class suffered ascertainable losses, in that they paid for dietary supplement products that they would not have purchased absent Defendants' misconduct.

370.     Plaintiff and the class are entitled to monetary damages, as well as equitable relief in the form of restitution, attorneys' fees, a declaration that Defendants' practices were in violation of OUTA, and any and all other relief the Court deems just.

## CLAIM XXI

### Breach of Express Warranty
### (OR. REV. STAT. § 72.8010)

371.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

372.     This claim is brought on behalf of Plaintiff Joan McDonald and the Oregon statewide class.

373.     Plaintiff and Oregon class members are "buyers" within the meaning of Oregon law.

374.     Defendants are "sellers" within the meaning of Oregon law.

375.     All Day Energy Greens are "goods" within the meaning of Oregon law.

376.     The representations on Defendants' packaging created an express warranty between buyer and seller under Oregon law. Specifically, Defendants represented that All Day Energy Greens were fit for human consumption, safe, "immune-enhancing," and that the product promoted healthy digestive function. Defendants also represented that the supplement was manufactured using the ingredients appearing on the label.

377.     These representations constituted affirmations of fact and/or promises and/or product descriptions that related to All Day Energy Greens and became part of the basis of the bargain by which Plaintiff and members of the Oregon class chose to purchase the product.

378.     Furthermore, Defendants knew or should have known that All Day Energy Greens did not fulfill the representations made on its label and/or in Defendants' advertisements.

Defendants knew or should have known that All Day Energy Greens was not safe for human consumption, could cause detrimental health outcomes, and would not deliver the benefits represented by Defendants.

379.    Indeed, All Day Energy Greens was not safe for humans to consume and has caused people to become ill and/or die after consumption.

380.    As a direct and proximate result of the Defendants' acts and/or omissions, Plaintiff and the Oregon class members have suffered injuries, damages, and losses as alleged herein.

381.    Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and members of the Oregon class are entitled to an award of exemplary and punitive damages, according to proof.

## CLAIM XXII

### Breach of Implied Warranty
### (OR. REV. STAT. § 72.3140)

382.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

383.    This claim is brought on behalf of Plaintiff Joan McDonald and the Oregon statewide class.

384.    Plaintiff and Oregon class members are "buyers" within the meaning of Oregon law.

385.    Defendants are "sellers" with respect to All Day Energy Greens within the meaning of OR. REV. STAT. § 72.3140.

386.    OR. REV. STAT. § 72.3140 provides a claim for relief for consumers who are damaged by the failure of a seller of goods to comply with an implied warranty of merchantability. As part of their implied warranty of merchantability, Defendants warranted that All Day Energy

Greens was a dietary supplement that was safe and fit for its ordinary purpose. As alleged herein, All Day Energy Greens was defective and unfit for human consumption.

387.    Furthermore, pursuant to OR. REV. STAT. § 72.3140(2)(f), goods are not merchantable where they fail to conform to the promises or affirmations of fact made on the container or label. Here, the label on All Day Energy Greens represented that the product was, *inter alia*, "immune-enhancing," promoted healthy digestive function, and was safe for human consumption. None of these representations were true.

388.    As a direct and/or proximate result of Defendants' acts and/or omissions, Plaintiff and members of the Oregon class have suffered injuries, damages, and losses, as alleged herein.

389.    Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and members of the Oregon class are entitled to an award of exemplary and punitive damages, according to proof.

## CLAIM XXIII

### Violation of the South Carolina Unfair Trade Practices Act
### (S.C. CODE ANN. § 39-5-10 *et seq.*)

390.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

391.    This claim is brought on behalf of Plaintiff John Peterson and the South Carolina statewide class.

392.    Each Defendant is a "person" under S.C. CODE ANN. § 39-5-10.

393.    The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." S.C. CODE ANN. § 39-5-20(a). Defendants engaged in unfair and deceptive acts or practices and violated the South Carolina UTPA by misrepresenting the contents, safety, and health effects of All Day

Energy Greens. Defendants represented, *inter alia*, that All Day Energy Greens were fit for human consumption, safe, "immune-enhancing," and aided healthy digestion. None of these representations were true, but all of the representations would be material to a reasonable consumer. Defendants' representations were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the content, safety, and effect of consuming All Day Energy Greens.

394.    Defendants' actions occurred in the conduct of trade or commerce.

395.    In the course of their business, Defendants concealed the true nature of All Day Energy Greens and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, concealment, suppression or omission of material facts with intent that others rely upon such concealment, suppression or omission in connection with the sale of All Day Energy Greens.

396.    Defendants knew or should have known that their conduct violated the South Carolina UTPA.

397.    Defendants owed Plaintiff and the South Carolina class members a duty to disclose the true contents, risks, and likely risks associated with consumption of All Day Energy Greens. Defendants bore this duty because they possessed exclusive knowledge about the true nature of All Day Energy Greens; intentionally concealed and/or obfuscated the risks associated with consumption of All Day Energy Greens; and made incomplete and/or false representations about the safety and effectiveness of All Day Energy Greens.

398.    As a result of Defendants' violation of the South Carolina UTPA, Plaintiff and South Carolina class members were deprived of the benefit of their bargain because they purchased

a dietary supplement that was neither effective nor safe for human consumption. Neither Plaintiff nor the class members would have purchased All Day Energy Greens had they known of the safety risks posed by consuming the supplement.

399.    As a direct and proximate result of Defendants' violations of the South Carolina UTPA, Plaintiff and the South Carolina class members have suffered injury-in-fact and/or actual damage, as alleged herein.

400.    Pursuant to S.C. CODE ANN. § 39-5-140(a), Plaintiff and the South Carolina class members seek monetary relief against Defendants to recover for their economic losses. Because Defendants' actions were willful and knowing, Plaintiff's damages should be trebled. *Id.*

401.    Plaintiff further alleges that Defendants' malicious and deliberate conduct warrants an assessment of punitive damages because the actions alleged herein were carried out with willful and conscious disregard of the rights and safety of others. Punitive damages are warranted according to proof at trial.

## CLAIM XIV

### Breach of Express Warranty
### (S.C. CODE ANN. § 36-2-313)

402.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

403.    This claim is brought on behalf of Plaintiff John Peterson and the South Carolina statewide class.

404.    Plaintiff and South Carolina class members are "buyers" within the meaning of South Carolina law.

405.    Defendants are "sellers" within the meaning of South Carolina law.

406.    All Day Energy Greens are "goods" within the meaning of South Carolina law.

407.     The representations on Defendants' packaging created an express warranty between buyer and seller under South Carolina law. Specifically, Defendants represented that All Day Energy Greens were fit for human consumption, safe, "immune-enhancing," and that the product promoted healthy digestive function. Defendants also represented that the supplement was manufactured using ingredients appearing on the label.

408.     These representations constituted affirmations of fact and/or promises and/or product descriptions that related to All Day Energy Greens and became part of the basis of the bargain by which Plaintiff and members of the South Carolina class chose to purchase the product.

409.     Furthermore, Defendants knew or should have known that All Day Energy Greens did not fulfill the representations made on its label and/or in Defendants' advertisements. Defendants knew or should have known that All Day Energy Greens was not safe for human consumption, could cause detrimental health outcomes, and would not deliver the benefits represented by Defendants.

410.     Indeed, All Day Energy Greens was not safe for humans to consume and has caused people to become ill and/or die after consumption.

411.     As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff and the South Carolina class members have suffered injuries, damages, and losses as alleged herein. Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and members of the South Carolina class are entitled to an award of exemplary and punitive damages, according to proof.

### CLAIM XV

### Breach of Implied Warranty
### (S.C. CODE ANN. § 36-2-314)

412.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

413.    This claim is brought on behalf of John Peterson and the South Carolina statewide class.

414.    Plaintiff and South Carolina class members are "buyers" within the meaning of South Carolina law.

415.    Defendants are "merchants" with respect to All Day Energy Greens within the meaning of S.C. CODE ANN. § 36-2-314.

416.    S.C. CODE ANN. § 36-2-314 provides a claim for relief for consumers who are damaged by the failure of a seller of goods to comply with an implied warranty of merchantability. As part of their implied warranty of merchantability, Defendants warranted that All Day Energy Greens was a dietary supplement that was safe and fit for its ordinary purpose. As alleged herein, All Day Energy Greens was defective and unfit for human consumption.

417.    As a direct and/or proximate result of Defendants' acts and/or omissions, Plaintiff and members of the South Carolina class have suffered injuries, damages, and losses, as alleged herein.

418.    Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and members of the South Carolina class are entitled to an award of exemplary and punitive damages, according to proof.

## CLAIM XXVI

### Violation of the Texas Deceptive Trade Practices Act
### (TEX. BUS. & COM. CODE § § 17.41 *et seq*.)

419.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

66

420.    This claim is brought on behalf of Plaintiffs Humberto Garcia, Luz Angelina Garcia, and the Texas statewide class.

421.    Plaintiffs and Defendants are "persons" as defined by the Texas Deceptive Trade Practices Act ("Texas DTPA").

422.    All Day Energy Greens is a "good" under the Texas DTPA.

423.    Plaintiffs and the Texas statewide class members are "consumers" under the Texas DTPA.

424.    Defendants have at all relevant times engaged in "trade" and "commerce" as defined in the Texas DTPA by advertising, offering for sale, selling, leasing, and/or distributing All Day Energy Greens in Texas, thereby directly or indirectly affecting Texas citizens through that trade and commerce.

425.    The allegations set forth herein constitute false, misleading, or deceptive trade acts or practices in violation of the Texas DTPA.

426.    By misrepresenting the contents and efficacy of All Day Energy Greens, and by failing to disclose and actively concealing the defects and potential harmfulness of the product, Defendants engaged in deceptive practices prohibited by the Texas DTPA, including (1) representing that All Day Energy Greens had characteristics, uses, benefits, and qualities it did not have, (2) representing that All Day Energy Greens was of a particular standard, quality, and grade when it was not, (3) advertising All Day Energy Greens with the intent not to sell it as advertised, and (4) engaging in acts or practices that are otherwise unfair, misleading, false, or deceptive to the consumer.

427.    Defendants knew that All Day Energy Greens was defectively manufactured and unfit for human consumption, but failed to warn Plaintiffs or the Texas statewide class members of these facts.

428.    Defendants had a duty to disclose All Day Energy Greens' defects and the risks posed thereby to Plaintiffs and the Texas statewide class.

429.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Texas statewide class, about the true characteristics of All Day Energy Greens.

430.    Defendants' intentional concealment of and failure to disclose the defective nature of All Day Energy Greens to Plaintiffs and the Texas statewide class constitutes "unconscionable action or course of action" under TEX. BUS. & COM. CODE § 17.45(5) because, to the detriment of Plaintiffs and the Texas statewide class, that conduct took advantage of their lack of knowledge, ability, and experience to a grossly unfair degree. That "unconscionable action or course of action" was a producing cause of the economic damages sustained by Plaintiffs and the Texas statewide class.

431.    Defendants are also liable under TEX. BUS. & COM. CODE § 17.50(a) because Defendants' breach of express warranty and the implied warranty of merchantability, as set forth below, was a producing cause of economic damages sustained by Plaintiffs and the Texas statewide class.

432.    Plaintiffs and the Texas statewide class sustained damages as a result of Defendants' unlawful acts and are, therefore, entitled to damages. Plaintiffs and the Texas statewide class seek treble the amount of their economic damages because Defendants intentionally concealed and failed to disclose the defective nature of All Day Energy Greens.

## CLAIM XXVII

### Breach of Express Warranty
### (TEX. BUS. & COM. CODE § 2.313)

433.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

434.    This claim is brought on behalf of Plaintiffs Humberto Garcia, Luz Angelina Garcia, and the Texas statewide class.

435.    Plaintiffs and Texas class members are "buyers" within the meaning of Texas law.

436.    Defendants are "sellers" within the meaning of Texas law.

437.    All Day Energy Greens are "goods" within the meaning of Texas law.

438.    The representations on Defendants' packaging created an express warranty between buyer and seller under Texas law. Specifically, Defendants represented that All Day Energy Greens were fit for human consumption, safe, "immune-enhancing," and that the product promoted healthy digestive function. Defendants also represented that the supplement was manufactured using the ingredients appearing on the label.

439.    These representations constituted affirmations of fact and/or promises and/or product descriptions that related to All Day Energy Greens and became part of the basis of the bargain by which Plaintiffs and members of the Texas class chose to purchase the product.

440.    Furthermore, Defendants knew or should have known that All Day Energy Greens did not fulfill the representations made on its label and/or in Defendants' advertisements. Defendants knew or should have known that All Day Energy Greens was not safe for human consumption, could cause detrimental health outcomes, and would not deliver the benefits represented by Defendants.

441.    Indeed, All Day Energy Greens was not safe for humans to consume and has caused people to become ill and/or die after consumption.

442.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiffs and the Texas statewide class members have suffered injuries, damages, and losses as alleged herein. Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiffs and members of the Texas class members are entitled to an award of exemplary and punitive damages, according to proof.

## CLAIM XXVIII

### Breach of Implied Warranty
### (TEX. BUS. & COM. CODE § 2.314)

443.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

444.    This claim is brought on behalf of Plaintiffs Humberto Garcia, Luz Angelina Garcia, and the Texas statewide class.

445.    Plaintiffs and the Texas class members are "buyers" within the meaning of Texas law.

446.    Defendants are "merchants" with respect to All Day Energy Greens within the meaning of TEX. BUS. & COM. CODE § 2.104(1).

447.    Under TEX. BUS. & COM. CODE § 2.314, a warranty that All Day Energy Greens was in merchantable condition was implied by law in the instant sales transactions when Plaintiffs and Texas class members purchased the products. As part of their implied warranty of merchantability, Defendants warranted that All Day Energy Greens was a dietary supplement that was safe and fit for its ordinary purpose. As alleged herein, All Day Energy Greens was defective and unfit for human consumption.

448.    Furthermore, pursuant to TEX. BUS. & COM. CODE § 2.314(b)(6), goods are not merchantable when they fail to conform to the promises or affirmations of fact made on the container or label. Here, the label on All Day Energy Greens represented that the product was, *inter alia*, "immune-enhancing," promoted healthy digestive function, and was safe for human consumption. None of these representations were true.

449.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiffs and members of the Texas class have suffered injuries, damages, and losses, as alleged herein.

450.    Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiffs and members of the Texas class are entitled to an award of exemplary and punitive damages, according to proof.

## CLAIM XXIX

### Violation of the Virginia Consumer Protection Act
### (VA. CODE ANN. § 59.1-196 *et seq.*)

451.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

452.    This claim is brought on behalf of Plaintiff Charles Copley and the Virginia statewide class.

453.    Defendants are "suppliers" under VA. CODE ANN. § 59.1-198.

454.    The sale of All Day Energy Greens to Plaintiff was a "consumer transaction" within the meaning of VA. CODE ANN. § 59.1-198.

455.    The Virginia Consumer Protection Act ("Virginia CPA") lists prohibited "practices" that include: "5. Misrepresenting that goods or services have certain characteristics"; "6. Misrepresenting that goods or services are of a particular standard, quality, grade style, or model"; "8. Advertising goods or services with intent not to sell them as advertised, or with intent

71

not to sell at the price or upon the terms advertised"; "9. Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions"; and "14. Using any other deception, fraud, or misrepresentation in connection with a consumer transaction." VA. CODE ANN. § 59.1-200. Defendants violated the Virginia CPA by misrepresenting that All Day Energy Greens had certain characteristics, ingredients, uses, or benefits; misrepresenting that All Day Energy Greens were of a particular standard, quality, grade, style, or model when they were not; advertising All Day Energy Greens with intent not to sell them as advertised; and otherwise "using any other deception, fraud, false pretense, false promise or misrepresentation in connection with a consumer transaction."

456.    Defendants' actions, as set forth herein, occurred in the conduct of trade or commerce.

457.    In the course of their business, Defendants concealed the defects, safety risks, and the true nature of All Day Energy Greens, and otherwise engaged in activities with a tendency or capacity to deceive. Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with intent for others to rely upon such concealment, suppression or omission in connection with the sale of All Day Energy Greens. The misrepresentations made by Defendants were material to a reasonable consumer, and were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and quality of All Day Energy Greens.

458.    Defendants knew or should have known that their conduct violated the Virginia CPA.

459.    Defendants owed Plaintiff a duty to disclose the safety risks and true nature of All Day Energy Greens because they (i) possessed exclusive knowledge about the safety risks and true

nature of All Day Energy Greens; (ii) intentionally concealed the foregoing from Plaintiff; and (iii) made incomplete representations about the safety, effectiveness, and health effects associated with consumption of All Day Energy Greens.

460.    Because Defendants were not truthful and made misrepresentations regarding All Day Energy Greens, Plaintiff and the members of the Virginia statewide class were deprived of the benefit of their bargain. Had Plaintiff and the Virginia statewide class members known that All Day Energy Greens were not fit for human consumption and/or did not possess the health benefits touted by Defendants, Plaintiff and the Virginia statewide class members would not have purchased the dietary supplements.

461.    As a direct and proximate result of Defendants' violations of the Virginia CPA, Plaintiff has suffered injury-in-fact and/or actual damage, as alleged herein.

462.    Pursuant to VA. CODE ANN. § 59.1-204, Plaintiff seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff. Because Defendants' conduct was committed willfully and knowingly, Plaintiff is entitled to recover the greater of (a) three times actual damages or (b) $1,000.

## CLAIM XXX

### Breach of Express Warranty
### (VA. CODE ANN. § 8.2-313)

463.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

464.    This claim is brought on behalf of Plaintiff Charles Copley and the Virginia statewide class.

465.    Plaintiff and Virginia class members are "buyers" within the meaning of Virginia law.

466.    Defendants are "sellers" within the meaning of Virginia law.

467.    All Day Energy Greens are "goods" within the meaning of Virginia law.

468.    The representations on Defendants' packaging created an express warranty between buyer and seller under Virginia law. Specifically, Defendants represented that All Day Energy Greens were fit for human consumption, safe, "immune-enhancing," and that the product promoted healthy digestive function. Defendants also represented that the supplement was manufactured using the ingredients appearing on the label.

469.    These representations constituted affirmations of fact and/or promises and/or product descriptions that related to All Day Energy Greens and became part of the basis of the bargain by which Plaintiff and members of the Virginia statewide class chose to purchase the product.

470.    Furthermore, Defendants knew or should have known that All Day Energy Greens did not fulfill the representations made on its label and/or in Defendants' advertisements. Defendants knew or should have known that All Day Energy Greens was not safe for human consumption, could cause detrimental health outcomes, and would not deliver the benefits represented by Defendants.

471.    Indeed, All Day Energy Greens was not safe for humans to consumer and has caused people to become ill and/or die after consumption.

472.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff and the Virginia statewide class members have suffered injuries, damages, and losses as alleged herein. Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and,

74

thereby, Plaintiff and members of the Virginia statewide class are entitled to an award of exemplary and punitive damages, according to proof.

## CLAIM XXXI

### Breach of Implied Warranty
### (VA. CODE ANN. § 8.2-314)

473.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

474.    This claim is brought on behalf of Plaintiff Charles Copley and the Virginia statewide class.

475.    Plaintiffs and the Virginia statewide class members are "buyers" within the meaning of Virginia law.

476.    Defendants are "merchants" with respect to All Day Energy Greens within the meaning of VA. CODE ANN. § 8.2-314.

477.    Under VA. CODE ANN. § 8.2-314, a warranty that All Day Energy Greens were in merchantable condition was implied by law in the instant sales transactions when Plaintiff and the Virginia statewide class members purchased the products. As part of their implied warranty of merchantability, Defendants warranted that All Day Energy Greens was a dietary supplement that was safe and fit for its ordinary purpose. As alleged herein, All Day Energy Greens was defective and unfit for human consumption.

478.    Furthermore, pursuant to VA. CODE ANN. § 8.2-314(2)(f), goods are not merchantable when they fail to conform to the promises or affirmations of fact made on the container or label. Here, the label on All Day Energy Greens represented that the product was, *inter alia*, "immune-enhancing," promoted healthy digestive function, and was safe for human consumption. None of these representations were true.

479.     As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff and members of the Virginia statewide class have suffered injuries, damages, and losses, as alleged herein.

480.     Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and members of the Virginia statewide class are entitled to an award of exemplary and punitive damages, according to proof.

## CLAIM XXXII

### Violation of the Wisconsin Deceptive Trade Practices Act
### (WIS. STAT. § 110.18)

481.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

482.     This claim is brought on behalf of Plaintiff Norman Skare, as personal representative of Betty Skare, and the Wisconsin statewide class.

483.     Defendants are "person[s], firm[s], corporation[s] or association[s]" within the meaning of WIS. STAT. § 100.18(1).

484.     Plaintiff is a member of "the public" within the meaning of WIS. STAT. § 100.18(1). Plaintiff purchased All Day Energy Greens, an unsafe and defective product.

485.     The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading." WIS. STAT. § 100.18(1). Defendants represented that, *inter alia*, All Day Energy Greens dietary supplements were safe for human consumption, promoted healthy digestive function, and was "immune-enhancing." Each of these representations were untrue, deceptive or misleading. Furthermore, each of these misrepresentations were material to a reasonable consumer.

486.     Defendants' actions, as set forth herein, occurred in the conduct of trade or commerce.

487.     By failing to disclose and actively concealing that All Day Energy Greens was not fit for human consumption, and did not have the health benefits claimed by Defendants, Defendants engaged in unfair and deceptive business practices in violation of the Wisconsin DTPA.

488.     In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risk posed by All Day Energy Greens.

489.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety and effectiveness of All Day Energy Greens.

490.     Defendants knew or should have known that their conduct violated the Wisconsin DTPA.

491.     Defendants owed Plaintiff a duty to disclose the safety risks and the true nature of All Day Energy Greens because they (i) possessed exclusive knowledge about the defective nature of All Day Energy Greens; (ii) intentionally concealed the foregoing from Plaintiff; and (iii) made incomplete representations about the safety and effectiveness of All Day Energy Greens while purposefully withholding material facts from Plaintiff that contradicted these representations.

492.     Defendants' misrepresentations deprived Plaintiff and members of the Wisconsin statewide class of the benefit of their bargain. Had Defendants disclosed that All Day Energy Greens were not fit for human consumption, and would not result in the health outcomes touted by Defendants, Plaintiff would not have purchased the dietary supplement.

493.    As a direct and proximate result of Defendants' violations of the Wisconsin DTPA, Plaintiff has suffered injury-in-fact and/or actual damages, as alleged herein. Plaintiff is entitled to damages and other relief provided for under WIS. STAT. § 100.18(11)(b)(2). Because Defendants' conduct was committed knowingly and/or intentionally, Plaintiff is entitled to treble damages.

## CLAIM XXXIII

### Breach of Express Warranty
### (WIS. STAT. § 402.313)

494.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

495.    This claim is brought on behalf of Plaintiff Norman Skare, as personal representative of Betty Skare, and the Wisconsin statewide class.

496.    Plaintiff and Wisconsin class members are "buyers" within the meaning of Wisconsin law.

497.    Defendants are "sellers" within the meaning of Wisconsin law.

498.    All Day Energy Greens are "goods" within the meaning of Wisconsin law.

499.    The representations on Defendants' packaging created an express warranty between buyer and seller under Wisconsin law. Specifically, Defendants represented that All Day Energy Greens were fit for human consumption, safe, "immune-enhancing," and that the product promoted healthy digestive function. Defendants also represented that the supplement was manufactured using the ingredients appearing on the label.

500.    These representations constituted affirmations of fact and/or promises and/or product descriptions that related to All Day Energy Greens and became part of the basis of the bargain by which Plaintiff and members of the Wisconsin statewide class chose to purchase the product.

78

501.     Furthermore, Defendants knew or should have known that All Day Energy Greens did not fulfill the representation made on its label and/or in Defendants' advertisements. Defendants knew or should have known that All Day Energy Greens was not safe for human consumption, could cause detrimental health outcomes, and would not deliver the benefits represented by Defendants.

502.     Indeed, All Day Energy Greens was not safe for humans to consume and has caused people to become ill and/or die after consumption.

503.     As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff and the Wisconsin statewide class members have suffered injuries, damages, and losses as alleged herein. Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and members of the Wisconsin class are entitled to an award of exemplary and punitive damages, according to proof.

## CLAIM XXXIV

### Breach of Implied Warranty
### (WIS. STAT. § 402.314)

504.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

505.     This claim is brought on behalf of Plaintiff Norman Skare, as personal representative of Betty Skare, and the Wisconsin statewide class.

506.     Plaintiff and Wisconsin class members are "buyers" within the meaning of Wisconsin law.

507.     Defendants are "merchants" with respect to All Day Energy Greens within the meaning of WIS. STAT. § 402.314(1).

508.    Under WIS. STAT. § 402.314, a warranty that All Day Energy Greens were in merchantable condition was implied by law in the instant sales transactions where Plaintiff and Wisconsin class members purchased the products. As part of their implied warranty of merchantability, Defendants warranted that All Day Energy Greens was a dietary supplement that was safe and fit for its ordinary purpose. As alleged herein, All Day Energy Greens were defective and unfit for human consumption.

509.    Furthermore, pursuant to WIS. STAT. § 402.314(2)(f), goods are not merchantable when they fail to conform to the promises or affirmations of fact made on the container or label. Here, the label on All Day Energy Greens represented that the product was, *inter alia*, "immune-enhancing," promoted healthy digestive function, and was safe for human consumption. None of these representations were true.

510.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff and members of the Wisconsin class have suffered injuries, damages, and losses, as alleged herein.

511.    Defendants' acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and members of the Wisconsin class are entitled to an award of exemplary and punitive damages, according to proof.

## CLAIM XXXV

## Negligent Misrepresentation

512.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

513.    This claim is brought on behalf of Plaintiffs and each of the statewide classes identified herein.

514.    Defendants owed a duty of care to Plaintiffs and the statewide class members to ensure all dietary supplements it sold were free from dangerous contaminants, would not cause deleterious and harmful effects upon consumption, and would produce the benefits advertised by Defendants. Defendants further owed a duty to Plaintiffs and the statewide class members to convey accurate and complete information concerning the risks and dangers associated with the purchase and consumption of All Day Energy Greens.

515.    Even though Defendant Bactolac did not sell All Day Energy Greens directly to Plaintiffs and the class members, it nonetheless owed those consumers a duty because it knew they were the intended beneficiaries of the statements appearing on All Day Energy Greens' labels and marketing materials. Bactolac knew full well who that it was manufacturing products meant to be sold to consumers, and it nonetheless knowingly and recklessly used harmful ingredients in its blending process that did not appear on the label, in contravention of law.

516.    Defendants breached their duties by selling All Day Energy Greens containing contaminations that are harmful and deleterious, failing to use proper manufacturing and production practices, using ingredients that were not listed on the product labels, failing to perform appropriate quality testing and control, failing to properly investigate reports of contamination, illness and/or death, failing to conform to the product label, and failing to adequately warn consumers of the dangers of All Day Energy Greens.

517.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiffs and the statewide class members have suffered injuries, damages, and losses as alleged herein.

## CLAIM XXXVI

## Unjust Enrichment

518.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

519.    This claim is brought on behalf of Plaintiffs and each of the statewide classes identified herein.

520.    In the alternative to the claims identified above, Plaintiff allege that they have no adequate remedy at law and bring this unjust enrichment claim.

521.    Plaintiffs and members of the statewide classes conferred a monetary benefit on Defendants in the form of monies paid for All Day Energy Greens.

522.    Plaintiffs and members of the statewide classes received no benefit from Defendants' sale of a defective, contaminated supplement.

523.    Under principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiffs and statewide class members because Defendants did not provide the product for which the money was tendered. Indeed, it would be inequitable for Defendants to retain the benefit they gained at the expense of Plaintiffs and the statewide class members.

524.    Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiffs and class members all unlawful or inequitable proceeds received by Defendants.

525.    A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendants traceable to Plaintiffs and members of the statewide classes.

## **PRAYER FOR RELIEF**

Plaintiffs, on behalf of themselves and all Class members, request the Court to enter judgment against Defendants as follows:

A.     An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Classes as requested herein, appointing the undersigned interim class counsel, and finding that Plaintiffs are proper representatives of the Classes requested herein.

B.     An order granting actual damages, punitive damages, statutory damages, exemplary damages, equitable relief, restitution, disgorgement of profits, attorneys' fees, statutory costs, and such further relief as is just and proper.

C.     A judicial declaration that Defendants sold untested, contaminated, and potentially deadly dietary supplements.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: July 13, 2018
New York New York

Respectfully submitted,

*/s/ James J. Bilsborrow*
James J. Bilsborrow
Peter Samberg
Weitz & Luxenberg PC
700 Broadway
New York, NY 10003
Tel: (212) 558-5500
Fax: (212) 344-5461

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, July 12, 2018, the foregoing Amended Class Action

Complaint was filed on the Court's CM/ECF system and therefore served on all parties of record

by operation of the CM/ECF system.

*/s/ James J. Bilsborrow*