UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
CHARLES COPLEY, JASON EVANS,
HUMBERTO GARCIA, LUZ
ANGELINA GARCIA, JOAN
MCDONALD, JOHN PETERSON,
BETTY PRESSLEY, NATALIE
ROBERTS, NORMAN SKARE,
individually and as person representative
for BETTY SKARE, DAVID STONE,
and KAYE WINK, individually and as
next of kin of DONALD WINK,

        Plaintiffs,

   -against-

BACTOLAC PHARMACEUTICAL,
INC.; NATURMED, INC. d/b/a
INSTITUTE FOR VIBRANT LIVING;
and INDEPENDENT VITAL LIFE,
LLC,

        Defendants.
-------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 18-CV-575 (FB) (PK)

*Appearances:*
*For the Plaintiffs*:
JAMES J. BILSBORROW
PETER SAMBERG
Weitz & Luxenberg, P.C.
700 Broadway
New York, New York 10003

*For Defendant Bactolac:*
HOWARD A. FRIED
WALTER H. SWAYZE III
CAMERON W. BROWN
Segal McCambridge Singer & Mahoney
850 Third Avenue, Suite 1100
New York, New York 10022

*For Defendant NaturMed:*
SHEILA CARMODY
COURTNEY HENSON
Snell and Wilmer L.L.P.
400 East Van Buren Street, Suite 1900
Phoenix, Arizona 85004

KAREN CAMPBELL
JOHN A. ANSELMO
Lewis Brisbois
77 Water Street, 21st Floor
New York, New York 10005

**BLOCK, Senior District Judge:**

Defendant Bactolac Pharmaceutical, Inc. ("Bactolac"), has made three motions in this putative multi-state class action. First, it moves to dismiss some of the plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Second, it moves to strike plaintiffs' prayer for punitive damages. Third, it moves for judgment on the pleadings on the cross-claims of its co-defendant, Naturmed, Inc. d/b/a Institute for Vibrant Living ("NaturMed"), pursuant to Federal Rule of Civil Procedure 12(c).

For the following reasons, the first motion is granted in part and denied in part. The second is denied in its entirety. The third is granted in part and denied in part.

## I.    MOTION TO DISMISS PLAINTIFFS' CLAIMS

Although the plaintiffs' complaint runs to 83 pages, the salient facts are relatively straightforward. The plaintiffs used "All Day Energy Greens" ("ADEG"),

2

a dietary supplement that they claim was a "dangerous mixture that resulted in serious illness and/or death among those who consumed it."  Am. Compl. ¶ 2.

ADEG was designed, marketed, distributed, and sold by NaturMed.  The actual product, however, was blended and packaged by Bactolac pursuant to a contract with NaturMed.  After receiving customer complaints, NaturMed voluntarily recalled ADEG beginning in 2016.

Invoking the Court's jurisdiction under the Class Action Fairness Act, the plaintiffs—who hail from ten different states—sued NaturMed, its alleged successor-in-interest, Independent Vital Life, LCC, and Bactolac in 2018.  Their general theory is that ADEG was not safe for human consumption because Bactolac failed to follow NaturMed's contractual instructions by adding inferior ingredients.

That theory was initially presented in thirty-six separate claims under the laws of twelve different states, in addition to general common-law.  Fortunately, the Court need not address all thirty-six as the plaintiff have withdrawn thirteen claims in response to the motion to dismiss; a fourteenth is asserted only against NaturMed. Of the remaining twenty-two claims, Bactolac has not moved to dismiss fourteen.

Thus, the parties' dispute is focused on eight claims, which the Court addresses in turn.

***Claim I***

Claim I alleges, on behalf of all plaintiffs, that Bactolac violated the federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2310.  That act provides a federal cause of action for breach of warranty under state law.  *See id.* § 2310(d)(1).  Thus, "claims under the Magnuson–Moss Act stand or fall with [the plaintiff's] express and implied warranty claims under state law."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).  Since Bactolac has not moved to dismiss all of the state-law warranty claims, the federal claim survives as well.

### Claim III

Claim III alleges, on behalf of all plaintiffs, that Bactolac violated § 349 of New York's General Business Law, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  Since no plaintiff is a New York resident, the claim is apparently premised on the fact that Bactolac is headquartered on Long Island.

In *Goshen v. Mutual Life Insurance Co. of New York*, 98 N.Y.2d 314 (2002), the New York Court of Appeals held that "the transaction in which the consumer is deceived must occur in New York."  *Id.* at 324.  It then stated that "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York."  *Id.* at 325.

*Goshen*'s language had led to what the Second Circuit described as "two divergent lines of decisions."  *Cruz v. FXDirect Dealer, LLC*, 720 F.3d 115, 123 (2d

4

Cir. 2013). The first focuses on "where the deception of the plaintiff occurs and require[s], for example, that a plaintiff actually view a deceptive statement while in New York." *Id*. (citing cases). The second focuses on "where the underlying deceptive 'transaction' takes place, regardless of the plaintiff's location or where the plaintiff is deceived." *Id*. (citing cases).

Here, neither the transaction nor the alleged deception occurred in New York. Indeed, there was no contact at all between the plaintiffs and Bactolac. To be sure, Bactolac allegedly deceived *NaturMed* by representing that it had complied with the latter's instructions, but that is a matter between those two companies. In any event, § 349 covers only "consumer-oriented" conduct. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24 (1995) ("[S]ection 349 is directed at wrongs against the consuming public."). "Accordingly, private contractual disputes which are unique to the parties do not fall within the ambit of the statute." *Yellow Book Sales & Dist. Co. v. Hillside Van Lines, Inc.*, 950 N.Y.S.2d 151, 154 (2d Dep't 2012).

***Claim V***

Plaintiff Betty Pressley, an Alabama resident, alleges that Bactolac violated Alabama's Deceptive Trade Practices Act. Bactolac argues that the claim is barred by the act's one-year statute of limitations, *see* Ala. Code § 8-19-14. Pressley alleges

that she experienced gastrointestinal illness in 2014 and received a recall notice in 2016; the complaint was not filed until 2018.

Under Alabama law, the statute of limitations on a fraud claim does not begin to run "until the aggrieved party discovers or, in the exercise of reasonable care, should have discovered, the facts constituting the fraud." *Wheeler v. George*, 39 So. 3d 1061, 1081 (Ala. 2009). "Therefore, the limitations period commences when the plaintiff discovers the fraud or when facts are known which would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry." *Id*. (citations and internal quotation marks omitted).

The Court cannot say, as a matter of law, that experiencing illness and receiving a recall notice two years later would put a reasonable person on even inquiry notice of a connection to ADEG. Even if it would have, neither the product nor the recall provided any facts as to *Bactolac*'s role. *See id.* at 1082 ("[T]he question of when the party discovered or should have discovered the fraud is generally one for the jury." (citation and internal quotation marks omitted)).

### *Claim IX*

Plaintiff Jason Evans, a California resident, alleges that Bactolac violated § 17500 of California's Business and Professions Code, which prohibits untrue or misleading statements "in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means

whatever, including over the Internet."  Plaintiff's theory of liability is that Bactolac "knowingly and purposefully substituted cheaper ingredients not called for by NaturMed's label"; "falsely certified to NaturMed that it had used only those ingredients listed on the label"; and "affixed these labels to canisters of All Day Energy despite knowing that the ingredients contained therein did not match those listed on the label."  Pls'. Mem. of Law 12.  The first two items clearly do not constitute advertising.  With respect to the third, a product label could arguably qualify, but it is undisputed that NaturMed produced the labels for ADEG.  A company that affixes a label at the behest of another company responsible for a product's marketing and distribution to the pubic (as NaturMed was for ADEG) does not, in any reasonable sense, "advertise" the product.

### Claim XIX

Plaintiff Natalie Roberts, a Missouri resident, alleges that Bactolac breached an implied warranty under Missouri law.  "Under Missouri law, a remote purchaser may bring suit against the manufacturer for breach of implied warranties." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 129 (Mo. 2010).  However, the purchaser must also provide "notice to the seller of the injury."  *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 90 (Mo. Ct. App. 2011).  The complaint alleges no such notice.

*Claim XXIX*

Plaintiff Charles Copley, a Virginia resident, alleges that Bactolac violated Virginia's Consumer Protection Act, which prohibits various deceptive practices "by a supplier in connection with a consumer transaction." Va. Code § 59.1-200(A). As plaintiffs correctly argue, "a direct sale to a consumer is not required for the transaction to be covered by the [Act]." *Alexander v. Southeastern Wholesale Corp.*, 978 F. Supp. 2d 615, 622 (E.D. Va. 2013). Thus, unlike with some of the other statutes at issue, it is not dispositive that Bactolac did not directly interact with consumers.

However, the plaintiffs must still establish that Bactolac is a "supplier," which is defined as a "seller, lessor, licensor or professional who advertises, solicits, or engages in consumer transactions, or a manufacturer distributor, or licensor who advertises and sells, leases or licenses goods and services to be resold, leased or sublicensed by other persons in consumer transactions." Va. Code § 59.1-198. For the reasons already discussed, Bactolac did not itself engage in consumer transactions. Nor did it sell, lease or license goods to NaturMed; rather, it manufactured NaturMed's product pursuant to a contract. Such an arrangement is not covered by the statutory definition.

*Claim XXXII*

Plaintiff Norman Skare, a Wisconsin resident, alleges that Bactolac violated Wisconsin's Deceptive Trade Practice Act, which prohibits any "'advertisement, announcement, statement or representation ... to the public,' which contains an 'assertion, representation or statement of fact' that is 'untrue, deceptive or misleading.'" *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245 (Wis. 2004) (quoting Wis. Stat. § 100.18(1)). The complaint does not allege that Bactolac advertised, announced, stated, or represented anything to the public with respect to ADEG; as with Claim IX, the Court concludes that affixing a label designed by NaturMed does not qualify.

*Claim XXXVI*

Claim XXXVI alleges a common-law claim of unjust enrichment on behalf of all plaintiffs. Specifically, the plaintiffs allege that they "conferred a monetary benefit on Defendants in the form of monies paid for All Day Energy Greens." Am. Compl. ¶ 521. That benefit, however, was conferred only on NaturMed. Any benefit indirectly received by Bactolac from the sale of ADEG is insufficient to support a claim of unjust enrichment. *See Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (explaining that New York law requires the benefit to "specific and direct"). The plaintiffs argue that New York law does not necessarily govern the claim, but they do not cite any cases showing that the rule is different in other states. "The first step

9

in any choice-of-law analysis is to determine if there is actually a conflict between the laws of the competing jurisdictions.  If there is none, then the law of the forum state where the action is being tried should apply." *SNS Bank, N.V. v. Citibank, N.A.*, 777 N.Y.S.2d 62, 64 (1st Dep't 2004) (citations omitted).

## II.  MOTION TO STRIKE PUNITIVE DAMAGES

Several of plaintiffs' claims seek punitive damages.  Bactolac argues that the plaintiffs have failed to satisfy the standard for such damages under New York law.  But as the plaintiffs point out, their requests for punitive damages are tied to individual claims, only one of which is governed by New York law.

In any event, the complaint adequately pleads entitlement to punitive damages under New York law.  "Punitive damages are permitted when the defendant's wrongdoing is not simply intentional but "evince[s] a high degree of moral turpitude and demonstrate[s] such wanton dishonesty as to imply a criminal indifference to civil obligations" *Ross v. Louise Wise Servs., Inc*., 8 N.Y.3d 478, 489 (2007) (quoting *Walker v. Sheldon*, 10 N.Y.2d 401, 405 (1961)).  "There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton." *Prozeralik v. Capital Cities Commc'ns, Inc.*, 82 N.Y.2d 466, 479 (1993) (quoting *Prosser and Keeton on Torts*).

10

Here, the plaintiffs have alleged that Bactolac substituted ingredients without safety testing them, that it continued to do so after being informed of reports of illness, and that it covered up its actions.  It may prove to be the case, of course, that Bactolac did nothing wrong, or that it was merely negligent.  But the Court cannot say, based solely on the allegations of the complaint, that punitive damages are not available.

### III.      MOTION TO DISMISS NATURMED'S CROSS-CLAIMS

In addition to disputing the plaintiffs' claims, NaturMed and Bactolac argue between themselves as to who is responsible for the alleged defect in ADEG. Bactolac argues that NaturMed's "untested" formula is to blame, while NaturMed argues that Bactolac did not comply with its contractual specifications, substituting inferior ingredients and using unsanitary manufacturing processes.

In 2016, Bactolac sued NaturMed in Arizona for breach of contract for failure to pay for its deliveries of ADEG.  NaturMed answered the complaint and asserted as an affirmative defense that Bactolac has providing a nonconforming product.  In addition, NaturMed counterclaimed for breach of contract and breach of express and implied warranties.

NaturMed eventually moved to dismiss its counterclaims without prejudice, arguing that the recall of ADEG and litigation over ADEG had caused it such substantial financial harm that it was forced to cease operations and could no

longer afford to pursue its counterclaims.  Over Bactolac's objection, the Arizona court granted the motion.

Bactolac then moved for summary judgment on its breach of contract claim. NaturMed, again based on financial constraints, did not oppose the motion.  The Arizona court granted Bactolac summary judgment.

In this case, NaturMed has asserted cross-claims for (1) contractual indemnity, (2) breach of contract, (3) fraud, (4) breach of express warranty, (5) breach of implied warranty, and (6) negligence.  Bactolac moves to dismiss all but the indemnity counterclaim.  It argues that they are barred by issue preclusion and claim preclusion.

***Issue Preclusion/Collateral Estoppel***

"Collateral estoppel or issue preclusion is applicable when the issue or fact to be litigated was actually litigated in a previous suit, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment." *Chaney Bldg. Co. v. City of Tucson*, 716 P.2d 28, 30 (1986).  Bactolac argues that the Arizona court's summary judgment constitutes a final adjudication that its deliveries of ADEG conformed to NaturMed's specifications.

12

Not so.  An issue is "actually litigated" when it is "properly raised by the pleadings or otherwise, and is submitted for determination, and is determined."  *Id.* Although NaturMed raised the issue of nonconformity, it did not litigate the issue because it had gone out of business.  In fact, it did not oppose Bactolac's motion for summary judgment at all.  Thus, the Arizona court's summary judgment was effectively a default judgment, and "in the case of a judgment entered by confession, consent or default, none of the issues is actually litigated."  *Id.*

### Claim Preclusion/Res Judicata

NaturMed's claim preclusion argument is based on Arizona's compulsory counterclaim rule:  "A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and . . . does not require adding another party over whom the court cannot acquire jurisdiction."  Ariz. R. Civ. P. 13(a).  "[A] compulsory counterclaim must be asserted against a plaintiff in order to avoid the application of *res judicata.*"  *Lansford v. Harris*, 850 P.2d 126, 132 (Ariz. 1992).

Three of NaturMed's counterclaims—breach of contract, breach of express warranty, and breach of implied warranty—*were* raised as counterclaims in the Arizona action, but were dismissed without prejudice.  "A dismissal without prejudice . . . is not an adjudication on the merits and does not bar a second action

under the doctrine of claim preclusion." *Airfreight Exp. Ltd v. Evergreen Air Ctr., Inc.*, 158 P.3d 232, 237 (Ariz. Ct. App. 2007).

By contrast, NaturMed did not raise its counterclaims of fraud and negligence in the Arizona action. It argues that it could not have done so because those claims had not yet accrued. *See Lansford*, 850 P.2d at 131 ("[A] claim must be mature to be compulsory."). While it is true that a claim accrues only when the plaintiff "knows or should have known of both the what and who elements of causation," *Kool Radiators, Inc. v. Evans*, 278 P.3d 310, 314 (Ariz. Ct. App. 2012) (citation and internal quotation marks omitted), it is clear that NaturMed had sufficient knowledge; its counterclaims in the Arizona action specifically alleged that Bactolac had failed to blend ADEG "in a commercially reasonable and safe manner free of negligence and/or misconduct." Bactolac's Reply Mem. of Law, Ex. C.

## IV.   CONCLUSION

For the foregoing reasons, Bactolac's motion to dismiss is granted with respect to claims III, IX, XIX, XXIX, XXXII and XXXVI, and otherwise denied. In addition, the Court dismisses claims VI, VII, VIII, XIV, XV, XVI, XVIII, XXII, XIV, XXV, XXVII, XXXIII and XXXIV pursuant to plaintiffs' withdrawal of those claims. Accordingly, claims I, V, X, XI, XII, XIII, XVII, XX, XXI, XXIII, XXVI, XXVIII, XXX, XXXI and XXXV shall proceed.

Bactolac's motion to strike plaintiffs' request for punitive damages is denied.

Bactolac's motion for judgment on the pleadings is granted with respect to NaturMed's cross-claims for fraud and negligence, and denied with respect to the cross-claims for breach of contract, breach of express warranty, and breach of implied warranty. Those cross-claims, in addition to the cross-claim for contractual indemnity, shall proceed.

**SO ORDERED**.

      /S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 10, 2021

15